Donald Robinson (DR/8000)
**ROBINSON & LIVELLI**
*Attorneys for Plaintiffs*
*IDT Telecom, Inc.,*
*and Union Telecard Alliance, LLC*
Two Penn Plaza East
Newark, New Jersey 07105
(973) 690-5400
(973) 466-2760 - fax

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **IDT TELECOM, INC., and UNION TELECARD ALLIANCE, LLC;** | § § § | |
| **Plaintiffs,** | § § § | |
| **v.** | § § | |
| **CVT PREPAID SOLUTIONS, INC., DOLLAR PHONE SERVICES, INC., DOLLAR PHONE ENTERPRISE, INC., DOLLAR PHONE CORP., DOLLAR PHONE ACCESS INC., EPANA NETWORKS, INC., LOCUS TELECOMMUNICATIONS, INC., STI PHONECARD, INC., TELCO GROUP, INC., VOIP ENTERPRISES, INC., FIND & FOCUS ABILITIES, INC., TOTAL CALL INTERNATIONAL, INC., and JOHN DOES 1-100,** | § § § § § § § § § § § § § § | **CIVIL ACTION NO. _____**  **COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES, AND DEMAND FOR JURY TRIAL** |
| **Defendants.** | | |

Plaintiffs IDT Telecom, Inc. and Union Telecard Alliance, LLC (collectively

"Plaintiffs"), by and through their attorneys, for their complaint against Defendants CVT Prepaid

Solutions, Inc.; Dollar Phone Corp.; Dollar Phone Services, Inc.; Dollar Phone Enterprises, Inc.;

Dollar Phone Access, Inc.; Epana Networks, Inc.; Locus Telecommunications, Inc.; Total Call

International, Inc.; STi Phonecard, Inc.; Find & Focus Abilities, Inc; VOIP Enterprises, Inc.;

Telco Group, Inc.; and Does 1-100 (collectively "Defendants"), allege on knowledge as to Plaintiffs and otherwise upon information and belief, as follows:

## NATURE OF THE ACTION

1.      This action arises from a massive and systematic scheme by Defendants to deceive and/or mislead consumers who use prepaid calling cards.  The Complaint alleges that in violation of Section 43(a) of the Lanham Act and state statutory laws prohibiting unfair and deceptive trade practices.  The Defendants cheat calling card consumers by not providing them with the calling card minutes that Defendants promise them.

2.      The consumer fraud perpetrated by the Defendants injures both the consumer and Plaintiffs.  The following example illustrates these harms.  Take, for example, a $2 calling card that is sold by one of the Defendants to consumers that promises 125 minutes for a call from New York to the Dominican Republic but, in fact, when the call is made only delivers to the consumer 68 minutes.  In stark contrast, Plaintiffs' $2 calling card promises to deliver 94 minutes for the same call to the same destination and actually delivers all 94 minutes.

3.      The Defendants' deceptive practice damages the consumer because he or she ultimately has paid a significantly higher rate per minute for the call than effectively promised, because the number of minutes delivered is drastically less than promised.  Moreover, the consumer was unlawfully deprived of the opportunity to receive from Plaintiffs more minutes for the same $2 purchase.  Similarly, Plaintiffs are injured because in the competitive calling card business, consumers elect not to purchase Plaintiffs' card because, in the above example, on first blush it appears that the Defendants' card provides an additional 31 minutes for the same price.  Indeed, Plaintiffs have lost large portions of their market share, which they may never regain, because of this very practice.

4.      What makes this insidious scheme especially abhorrent in that it preys on a

repeated basis on vulnerable segments of the immigrant population, including the Hispanic community. Indeed, Plaintiffs believe that this deceptive practice causes consumers to lose more than $1 million a day – in other words, hundreds of millions of dollars annually.

## INTRODUCTION

5. Plaintiffs and Defendants provide prepaid telephone calling card services to consumers throughout the United States. The cards enable people, many of whom are Hispanic immigrants, to make international calls to their home countries at low cost. In excess of $2 billion dollars of prepaid calling cards are sold in a year.

6. The industry is extremely competitive and utilizes advertising. Consumers are given voice prompts each time they make a call with a card. These prompts inform them how many minutes they have for the call. Consumers rely on those voice prompts to compare cards, purchase subsequent prepaid cards, and recommend cards to family and friends.

7. Defendants are systematically falsely promising minutes on their posters, in their voice prompts, and other advertisements, that consumers can not obtain from the cards they have bought. Defendants' lies have systematically defrauded purchasers and unless stopped by this Court will continue to do so. Specifically:

a) Defendants' consumer fraud is currently ongoing at a rate, as demonstrated below, exceeding $1 million dollars a day and hundreds of millions of dollars annually.

b) Defendants, on an ongoing basis, are using illegal means to confiscate Plaintiffs' market share. Furthermore, Defendants are causing Plaintiffs to incur additional costs in attempting to compete with Defendants' fraudulent rates, thus destroying Plaintiffs' profit margins. Specifically, as shown below, Defendants' misconduct has cost and is costing Plaintiffs millions of dollars in lost sales. The destruction of the profit margin comes from Plaintiffs providing the full quantum of services promised, while Defendants save, on average, 40% on

3

their costs because on average they do not deliver 40% of what they promise.

8.      Defendants' conduct has damaged and is continuing to damage Plaintiffs' reputation of being the best value provider of quality calling cards.  Defendants' consumer fraud also has taken away from Plaintiffs a significant share of their business.  Additionally, Defendants' unlawful conduct has damaged the reputation of the prepaid calling industry.  Accordingly, Plaintiffs are compelled to commence this action, in essence to obtain a fair and honest market.  Specifically, plaintiffs seek a preliminary and permanent injunction barring Defendants from continuing in this massive and systemic fraud as well as money damages.

## PARTIES AND JURISDICTION

9.      Plaintiff IDT Telecom, Inc. ("IDT") is a Delaware corporation with its principal place of business located at 520 Broad Street, Newark, NJ 07102.

10.     Plaintiff Union Telecard Alliance, LLC ("UTA") is a Delaware limited liability company with its principal place of business located at 1979 Marcus Avenue, New Hyde Park, New York 11042.

11.     On information and belief, Defendant CVT Prepaid Solutions, Inc. ("CVT") is a Delaware corporation with its principal place of business located at 40 Cuttermill Road, Suite 500, Great Neck, New York  11021.

12.     On information and belief, Defendants Dollar Phone Corp. ("DP Corp"), Dollar Phone Services, Inc. ("DP Services"), Dollar Phone Enterprises, Inc. ("DP Enterprises") and Dollar Phone Access, Inc. ("DP Access") (collectively "Dollar Phone") are each New York corporations with their principal places of business at 232 Broadway, Brooklyn, New York 11211.

13.     On information and belief, Defendant Epana Networks, Inc. ("Epana") is a Delaware corporation with its principal place of business located at 1250 Broadway, 30th Floor,

4

New York, New York  10001.

14.     On information and belief, Defendant Locus Telecommunications, Inc. ("Locus") is a Delaware corporation with its principal place of business located at 111 Sylvan Avenue, Englewood Cliffs, New Jersey  07632.

15.     On information and belief, Defendant Total Call International, Inc. ("Total Call") is a California corporation with its principal place of business located at 707 Wilshire Boulevard, 12th Floor, Los Angeles, California  90017.

16.     On information and belief, Defendant STi Phonecard, Inc. ("STi Phonecard") is a New York corporation with its principal place of business located at 30-50 Whitestone Expressway, 4th Floor, Flushing, New York  11354.

17.     On information and belief, Defendant Find & Focus Abilities, Inc. ("Find & Focus") is a New York corporation with its principal place of business located at 30-50 Whitestone Expressway, 4th Floor, Flushing, New York  11354.

18.     On information and belief, Defendant VOIP Enterprises, Inc. ("VOIP") is a Delaware corporation with its principal place of business located at 30-50 Whitestone Expressway, 4th Floor, Flushing, New York  11354.

19.     On information and belief, Defendant Telco Group, Inc. ("Telco") is a Delaware Corporation with its principal place of business located at 30-50 Whitestone Expressway, 4th Floor, Flushing, New York  11354.

20.     Defendants STi Phonecard, Find & Focus, VOIP and Telco are collectively referred to herein as "STi."

21.     On information and belief, Does 1 through 100 are corporate officers and/or directors of the above named Defendants that have personally participated in the wrongful acts more particularly identified below.

5

22.     As Defendants are engaged in a massive fraud on the public, this is a Complaint for false advertising and unfair and deceptive trade practices under:  the Trademark Act of 1946, 15 U.S.C. §§ 1051 et seq. (the Lanham Act); Article 56 of the New Jersey Annotated Statutes; N.Y. Gen. Bus. §§ 349 and 350; Cal. Bus. & Prof. Code § 17200 and Cal. Bus. & Prof. Code § 17500; Fla. Stat. §§ 501.201 et seq. and 817.41; and 815 ILCS 505/1 et seq. and 815 ILCS 510/2 et seq.

23.     This Court has original jurisdiction over this action under 28 U.S.C. §§ 1331, 1338 and 1367, and under 15 U.S.C. §§ 1116, 1121, and 1125.  This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367(a), and the doctrine of pendent jurisdiction.

24.     This Court has personal jurisdiction over Defendants because Defendants have their principal places of business in this District, are registered to do business in New Jersey, have committed acts of false advertising and unfair competition and deceptive trade practices in this District, and/or have sufficient minimum contacts with this District.

25.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the injury, acts of false advertising and deceptive trade practices took place in this District.

## FACTS

### The Parties

26.     IDT is an internationally recognized provider of wholesale and retail telecommunications services, including prepaid calling cards.  UTA is one of the largest distributors of prepaid calling cards in the United States and is the exclusive distributor of prepaid calling cards for IDT in the United States.  Plaintiffs have been in the prepaid calling card industry since approximately 1998.

27.     Upon information and belief, CVT is in the business of servicing, manufacturing

6

and/or distributing prepaid telephone calling cards in the State of New Jersey and throughout the nation, and further creates, disseminates and distributes advertising in conjunction therewith (the "CVT Advertising").

28.     Upon information and belief, Does 1-10 are officers, employees and/or agents of CVT and actively participated in the creation of and/or approved the false and deceptive CVT Advertising at issue herein.

29.     Upon information and belief, Dollar Phone is in the business of servicing, manufacturing and/or distributing prepaid telephone calling cards in the State of New Jersey and throughout the nation, and further create, disseminate and distribute advertising in conjunction therewith (the "Dollar Phone Advertising").  Upon information and belief the Dollar Phone Defendants act in concert with each other to create, disseminate and distribute the Dollar Phone prepaid telephone calling card advertising at issue herein.

30.     Upon information and belief, Does 11-20 are officers, employees and/or agents of Dollar Phone and actively participated in the creation of and/or approved the false and deceptive Dollar Phone Advertising at issue herein.

31.     Upon information and belief, Epana is in the business of servicing, manufacturing and/or distributing prepaid telephone calling cards in the State of New Jersey and throughout the nation, and further creates, disseminates and distributes advertising in conjunction therewith (the "Epana Advertising").

32.     Upon information and belief, Does 21-30 are officers, employees and/or agents of Epana and have actively participated in the creation of and/or approved the false and deceptive Epana Advertising at issue herein.

33.     Upon information and belief, Locus is in the business of servicing, manufacturing and/or distributing prepaid telephone calling cards in the State of New Jersey and throughout the

nation under its own name and under the names GEO Telecom, Locus Mobile, UNI, CallPlus and

CallPlus Global, and further creates, disseminates and distributes advertising in conjunction

therewith (the "Locus Advertising").

34.     Upon information and belief, Does 31-40 are officers, employees and/or agents of

Locus and have actively participated in the creation of and/or approved the false and deceptive

Locus Advertising at issue herein.

35.     Upon information and belief, Total Call is in the business of servicing,

manufacturing and/or distributing prepaid telephone calling cards in the State of New Jersey and

throughout the nation, and further creates, disseminates and distributes advertising in conjunction

therewith (the "Total Call Advertising").

36.     Upon information and belief, Does 41-50 are officers, employees and/or agents of

Total Call and have actively participated in the creation of and/or approved the false and

deceptive Total Call Advertising at issue herein.

37.     Upon information and belief, STi Phonecard, Find & Focus, VOIP and Telco are

in the business of servicing, manufacturing and/or distributing prepaid telephone calling cards in

the State of New Jersey and throughout the nation.  Upon information and belief the STi

defendants act in concert with each other to create, disseminate and distribute advertising in

conjunction therewith (the "STi Advertising").

38.     Upon information and belief, Does 51-60 are officers, employees and/or agents of

the STi defendants and have actively participated in the creation of and/or approved the false and

deceptive STi Advertising at issue herein.

39.     This case involves a $1 million a day fraud, perpetrated on consumers using false

and deceptive advertising being created, manufactured, disseminated and/or distributed by

Defendants in connection with their respective prepaid calling cards.

## IDT'S and UTA's Prepaid Calling Card Business

40.     As an internationally recognized provider of telecommunications services, IDT supplies the telecommunications services offered via the Plaintiffs' calling cards.  IDT routes its traffic over networks of major communication companies, or local and international carriers of comparable quality, to ensure quality in the communication.  Plaintiffs' calling cards are sold in denominations of $2, $3, $5, $10, and $20, with the $2, $3, and $5 denominations being the most popular.

41.     Plaintiffs' calling cards are currently sold nationwide in retail outlets and over the Internet. They are marketed under various brand names, including the BOSS card.  IDT and UTA are known throughout the prepaid calling card industry as the source of high quality services and products.

42.     Plaintiffs have devoted a substantial amount of time, effort, and resources to the promotion, advertising, and marketing of their calling cards.  Given UTA's extensive distribution network and the high quality of the long distance services provided by IDT, their calling cards have become among the best-selling prepaid telephone calling card brands in the U.S.  The average retail sales value of the calling cards sold by Plaintiffs since 2002 is over $1.1 billion per year.  Indeed, the combination of the low price and high quality of Plaintiffs' calling cards has generated considerable consumer loyalty to their brands.  This loyalty is being lost as a result of the Defendants' unlawful activities.

## The Prepaid Calling Card Industry

43.     The purchaser of a prepaid telephone calling card actually buys access to increments of long distance telephone access via a fully automated computer system, commonly referred to in the industry as a "platform."  The platform processes various relevant data points, including the value of the prepaid calling card, the telephone rate table in effect, the origin of the

caller, and the destination of the call, allowing the company to determine, and then inform the consumer, as to the amount of time he or she has for the call.  Typically, the prepaid telephone calling card has a local or toll-free telephone access number for its users to utilize to place a long distance call.  Once the consumer dials the local access or toll-free number, he or she is prompted by the platform to enter a personal identification number ("PIN") found on the back of the card.  After the platform verifies the PIN, the consumer is then granted access to the long distance services he or she purchased.  The consumer is subsequently prompted by the platform to enter the destination telephone number he or she wishes to be connected with.

44.     After the consumer enters the destination number, a voice prompt for an IDT card states the number of minutes available for the call, e.g.: "You have 42 minutes for this call."  This voice prompt is generated by the platform.  The voice prompt is the most important source of information available to the consumer concerning the number of minutes a card provides for a call as it provides the consumer with the most up-to-date information.  Consumers rely on the information provided on the voice prompts to compare cards, purchase subsequent prepaid cards, and recommend cards to family and friends.  The vast majority of regular calling card users make purchase decisions based upon their past experience with the cards and upon recommendations from other users.

45.     Upon information and belief, the number of minutes thought to be available on a card is a primary factor in most prepaid calling card consumers' purchasing decisions.  In fact, a 2003 independent survey commissioned by IDT confirmed that 61% of purchasers said the most minutes for the cost was one of the most important factors in their purchasing decision and 57% said that most minutes for the cost was the most important factor.

46.     Once the consumer has exhausted the increments of long distance telephone services purchased, the PIN ceases to provide access to such telecommunications services.  The

number of minutes of talk time that are delivered for a specific call is based on the location that is being called, and is calculated by including all applicable fees and charges.

47.    Plaintiffs spent millions of dollars on advertising and promotion of its calling cards in 2006. Advertising and promotion for the cards includes point of sale posters, radio, television and Internet, as well as the "voice prompts" that customers hear when they use the cards.

48.    Plaintiffs continually provide hundreds of thousands of posters to all of their distributors, which identify the potential minutes that can be obtained if the card is used to call a specific destination.  In addition, Plaintiffs sometimes provide posters that show both the minutes and the rates.

49.    It is common industry practice to offer a highly competitive rate when a card is first released and promote that rate on the poster along with the corresponding number of minutes of call time.

50.    Plaintiffs also promote their calling cards with the "voice prompts" that consumers hear when they use the cards.  The voice prompts state how many minutes of use are available when a call is placed to a specific location.

51.    As discussed above, Plaintiffs have invested millions of dollars in advertising and promoting their brands and ensuring high quality and low priced services to consumers.  In doing so, Plaintiffs have garnered substantial good will and a loyal customer base for their card brands. For example, Plaintiffs' BOSS card has been and continues to be one of the most popular calling card brands in the country, so popular in fact that Plaintiffs have constantly had to remain vigilant to protect their rights.  Plaintiffs have commenced numerous trademark actions against infringers seeking to capitalize on their good will and have successfully vindicated their rights.

52.    Upon information and belief, there is a high degree of brand loyalty in the industry as many prepaid calling card consumers frequently buy the same brand of prepaid calling card

11

over and over.  Notwithstanding the importance of brand loyalty, consumers will put aside brand loyalty if they determine that rates offered are not competitive.  Rate is a key factor that consumers take into account in selecting a calling card.

53.     In fact, industry insiders believe that the minutes prompted at the beginning of a call are the key source of information for consumers in determining which cards are offering the best rates.  Consumers not only rely on the prompt to determine how much calling time is on the purchased card, consumers also rely on the prompt to plan their next calling card purchase.

54.     Among the IDT/UTA distributors, rates are the most important factor in considering whether to carry IDT/UTA's cards as rates drive customer demand.  It is the nature of the industry that IDT has no choice but to offer rates competitive with Defendants' advertised rates.  If Plaintiffs do not offer rates that are competitive with Defendants' rates, Plaintiffs' distributors will not carry Plaintiffs' cards.

55.     The prepaid calling card industry operates on thin margins and is highly competitive.  Due to low entry costs, there are many different companies and competitors who continually strive to offer the lowest rate possible as that is the key factor for distributors to carry a card and one of the main reasons consumers will select a card. Prepaid calling card providers also have to compete with rates offered by other telecommunications providers such as cell phone and traditional land line services.

56.     Calling cards are popular among people who desire low cost telecommunication services such as recent immigrants and other persons having long distance and international calling needs who desire low cost telecommunication services, and in order to satisfy budgetary concerns.  As an example, persons having recently emigrated to the United States often have communication needs with family of their home country.  Because these groups of people tend to be heavy users of international long distance, Plaintiffs and Defendants actively market their

calling cards to them, among others. Recognizing their strong customer base in the immigrant community, Plaintiffs value the immigrant community as loyal customers and strive to provide them with products that cater to their needs, including attractive rates and reliable service. Some of the most frequent destination countries for immigrants using calling cards to communicate with their loved ones are the Dominican Republic, Guatemala, Mexico, El Salvador, Colombia, Nicaragua, Ecuador, Haiti, Honduras and Peru.

57.    A large percentage of consumers use the entire balance (amount of minutes) on their first call.

58.    IDT/UTA cards are fully capable of delivering 100% of the minutes promised on the posters and the voice prompts.

59.    However, as detailed below, Defendants' cards virtually never provide the minutes advertised to consumers on their posters and voice prompts. Indeed, Plaintiffs' internal testing shows that vast majority of Defendants' cards tested delivered substantially fewer minutes than promised on the voice prompts. As discussed below, Plaintiffs' internal testing demonstrates that Defendants are systematically lying to consumers about the minutes promised on their posters and voice prompts. On information and belief, Defendants, on average, provide only approximately 60% of the minutes promised on their posters and voice prompts, thereby injuring consumers on virtually each and every calling card purchase. To make matters worse, on information and belief, defendants' information services regularly direct customers to listen to the voice prompts when questioned by consumers for information about their company's prepaid calling cards.

60.    Upon information and belief, this systemic under-delivery of minutes by Defendants could occur only because Defendants deliberately manipulated their computer hardware and software to falsely inflate the represented number of minutes delivered to the customer.

13

**Discovery of Defendants' Consumer Fraud**

61.     In the summer of 2006, Plaintiffs became aware that their major competitors were promising consumers an incredibly large number of minutes at very low rates.  These rates were far more aggressive than rates offered by competitors in the past.  Over the next several months, Plaintiffs explored various theories to determine how Defendants were offering such ultra-competitive rates.  By the end of November 2006, Plaintiffs had fallen short in explaining Defendants' unprecedented high promises of minutes and corresponding low rates.

62.     In December 2006, Plaintiffs tested a competitor's prepaid calling card that was offering very aggressive promises of high minutes and low rates.  On prior occasions, Plaintiffs had partially tested competitors' promises of minutes on cards and posters by making calls on the cards, seeing what minutes were prompted for particular destinations, and then simply hanging up after hearing the prompts confirm the posters and advertising.  On this occasion, departing from earlier tests, Plaintiffs used all the minutes on the card on a single call and discovered that the actual minutes delivered on the call were significantly less than the minutes prompted.

63.     At that time, Plaintiffs first suspected that some of the Defendants were flat out lying to consumers about the minutes their cards could deliver. Over the next few weeks, Plaintiffs conducted several tests of Defendant STi's cards that confirmed that the minutes provided to the consumer were actually substantially less than what was being promised on the voice prompt.

64.     In early 2007, Plaintiffs decided to institute large scale internal testing of Defendants' cards to verify the consumer fraud.  Plaintiffs established dedicated phone lines, and began the process of obtaining a large volume of phone numbers in various countries from the appropriate primary telecommunications provider in each country.  These numbers would be necessary to test Defendants' cards.

65.     In and around the weeks of January 22 and 29, 2007, Plaintiffs obtained, for internal testing, various cards from the following Defendants: CVT, Epana, Dollar Phone, Locus, STi, and Total Call.

66.     In addition, Plaintiffs obtained multiple new defendant cards as soon as they became available.  At around this time, Plaintiffs also obtained the phone numbers from the primary telecommunications providers necessary to begin testing these calling cards.

### Plaintiffs' Internal Testing Confirms Defendants' False And Deceptive Practices

67.     On or about February 5, 2007, Plaintiffs began internal testing of Defendants' cards. For the majority of their internal testing, Plaintiffs used dedicated PBX service lines at their New Jersey office equipped with call detail recording capabilities.  Plaintiffs made additional test calls from their New York office as well.  Using the access numbers and PINs on the cards collected, IDT/UTA personnel made calls from their offices in New Jersey and New York to several of the most popular prepaid calling card destinations.

68.     At the beginning of each call, the prompts were listened to and inputted by IDT/UTA testing personnel into the database and the tester remained on the line until the card was depleted of minutes (or otherwise disconnected). Concomitant with the test call, each tester either (i) manually entered all the relevant date, time, card, and prompt information into a spreadsheet or (ii) provided other employees with such information.  Plaintiffs then compiled all of the data into the central internal testing database.  For the test calls made from the New Jersey office, Plaintiffs have additional PBX records to backup the date and time of the call, the number dialed and the length of the call.

69.     Between February 5, 2007 and March 1, 2007, Plaintiffs tested more than 150 of Defendants' cards with access numbers from across the United States.

70.     Plaintiffs also subjected various IDT cards to the same testing. Plaintiffs have

preserved and maintained within a secure location all cards tested and posters documenting Plaintiffs' internal testing. The results of the testing are as follows:

71. Defendant CVT's standard prompt states that "You have X Minutes for this call." CVT's cards delivered an average of 55% of the minutes their cards promised in their voice prompts. Plaintiffs tested seven different CVT prepaid calling cards to four locations.

72. Defendant Dollar Phone's standard prompt states "Your current balance will allow you to talk for X minutes." Dollar Phone's cards delivered an average of 62% of the minutes their cards promised in their voice prompts. Plaintiffs tested eight different Dollar Phone prepaid calling cards to four locations.

73. Defendant Epana's standard prompt states that "You have X Minutes available for this call." Defendant Epana's cards delivered an average of approximately 55% of the minutes their cards promised in their voice prompts. Plaintiffs tested ten different Epana prepaid calling cards to seven locations.

74. Defendant Locus' standard prompt states "You have X minutes remaining." Locus' cards delivered an average of approximately 55% of the minutes their cards promised in their voice prompts. Plaintiffs tested thirteen different Locus prepaid calling cards to seven locations.

75. Defendant STi's standard prompt states "You have X Minutes." STi's cards delivered an average of 70% of the minutes their cards promised in their voice prompts. Plaintiffs tested 19 different STi prepaid calling cards to six different locations.

76. Defendant Total Call's standard prompt states "Your current balance will allow you to talk for X minutes." Total Call's cards delivered an average of 60% of the minutes their cards promised in their voice prompts. Plaintiffs tested four different Total Call prepaid calling cards to five different locations.

77.     Based on Plaintiffs' internal testing, Defendants' cards delivered an average of approximately 60% of the minutes promised on their voice prompts when the card was used in one call.

78.     By contrast, Plaintiffs' cards delivered 100% of the minutes promised on their voice prompts when the card was used in one call.

79.     In many instances, Defendants promised the same number of minutes on their poster and their voice prompt yet delivered less than 65% of the minutes promised. For example:

(a)     Defendant CVT's *CVT Texas* card, PIN 050-934-9007, promised 60 minutes on the poster and the voice prompt for a call to Haiti, yet only delivered 30 minutes, 50% of the time promised.

(b)     Defendant Dollar Phone's *Langosta* card; PIN 6121-651-7198, promised 120 minutes on the poster and the voice prompt for a call to the Dominican Republic, yet only delivered 50 minutes, 42% of the time promised.

(c)     Defendant Epana's *Te Cuenta* card, PIN 5380-6575-123, promised 65 minutes on the poster and the voice prompt for a call to Guatemala, yet only delivered 24 minutes, 37% of the time promised.

(d)     Defendant Locus's *Hot Dog* card; PIN 371-442-0449, promised 100 minutes on the poster and the voice prompt for a call to the Dominican Republic, yet only delivered 57 minutes, 57% of the time promised.

(e)     Defendant Locus's *Speedy Call Carribean* card, PIN 428-791-4893, promised 112 minutes on the poster and the voice prompt for a call to the Dominican Republic, yet only delivered 22 minutes, 20% of the time promised.

(f)     Defendant STi's *Mass* (Blue) card, PIN 6801-269-7057, promised 46 minutes on the poster and the voice prompt for a call to El Salvador, yet only delivered 29 minutes, 63% of the time promised.

80.     Defendants' actual delivered minutes are virtually always less than advertised on their posters and voice prompts. In several instances, where Plaintiffs tested a card close in time

to the date when a Defendant issued a new card and new poster, they confirmed that the Defendants' poster and voice prompt were promising false rates from the very beginning. For instance, Plaintiffs tested Defendant Dollar Phone's *Moto Concho* card on February 23, 2006, the day the card was first discovered. *Moto Concho*, PIN 453-0225-567, promised 125 minutes on the poster and the voice prompt for a call to the Dominican Republic and only delivered 68 minutes, 54% of the minutes promised.

81.     On information and belief, Defendants' advertising on radio, television and the Internet is similarly false and misleading.

82.     For example, Defendant Locus's *Hot Dog* $2 card radio advertisements promised 100 minutes to the Dominican Republic. The poster and voice prompt also promised 100 minutes. However, the card only delivered 43 minutes, 43% of the time provided. Defendant Locus's *Hot Dog* $2 card radio advertisements also promised 50 minutes to Guatemala. The poster and prompts promised 49 minutes. However, the card only delivered 22 minutes.

### **Independent Testing Confirms Defendants' False and Deceptive Practices**

83.     In February 2007, Plaintiffs retained an independent investigator, The Accetta Group, LLC ("TAG") to develop a protocol for the blind testing of Defendants' and Plaintiffs' cards.

84.     Plaintiffs supplied TAG with the cards to be tested and, at least initially, the destinations to be called. Plaintiffs sent TAG PINs for the same cards that they internally tested and included IDT cards for TAG to blindly test. TAG's results confirm Defendants' widespread deception.

85.     Defendants' cards do not contain any disclaimer that the minutes promised on the poster and the voice prompt are virtually never delivered to the consumer. Some cards are wholly silent on this issue. A card for one Defendant, STi, offers the following: "Application of

18

surcharges and fees will have the effect of reducing total minutes actually received on the card from the minutes announced." This underscores STi's purposeful misrepresentation of their unlawful practices.

86.     Indeed, none of the Defendants' disclosures clarifies that their cards virtually never deliver the number of minutes promised on the posters and in their voice prompts.

87.     The prepaid calling card industry generates approximately over $2 billion in annual retail sales. Upon information and belief, Defendants generate approximately $1 billion of sales per year.

88.     As stated above, Defendants are depriving consumers of approximately 40% of the minutes promised on their calling card prompts. Defendants are therefore deceiving consumers of approximately an estimated $400 million per year, or stated another way, over $1 million a day. This fraud is still ongoing and damaging parts of this country's most vulnerable population.

### Defendants' Consumer Fraud Has Irreparably Harmed Plaintiffs' Reputation, Caused Lost Sales, and Caused Plaintiffs to Incur Exorbitant Costs to Compete with Defendants' Deceptive Rates

89.     After several years of investment and building a reputation of providing high quality telecommunications services and low prices, Plaintiffs became a leading prepaid calling card provider in the United States. Their annual retail sales for 2003, 2004 and 2005 were approximately $1.22 billion, $1.27 billion, and $1.23 billion, respectively. Over that period, Plaintiffs' monthly retail sales averaged approximately $103.4 million per month.

90.     In June 2006, at the same time that Plaintiffs first realized Defendants' unprecedented low rates, and six months before discovery of Defendants' deceptive business practices, Plaintiffs' monthly retail sales dropped to approximately $86 million. This was the lowest monthly total for June since 2001 at $78.3 million. For the previous three years, monthly retail sales for June had averaged $ 106 million. The retail sales figures for July 2006 also

drastically departed from the norm, falling to $89 million. For the previous three years, July retail sales had averaged $110.6 million.

91.     Over the next few months, the pattern continued with August 2006 ($83 million versus three year average of $109 million); September 2006 ($72 million versus three year average of $103.5 million); October 2006 ($71 million versus three year average of $104.2 million); November 2006 ($69 million versus three year average of $99.9 million); and December 2006 ($75 million versus three year average of $ 105.7 million). The downtrend has continued, if not accelerated, in the first two months of 2007 with January sales at $67 million (three year average of $101.7 million) and February sales at $56 million (three year average of $ 90.7 million).

92.     Because Plaintiffs cannot compete with the Defendants' fraudulent and/or deceptive rates, Plaintiffs have lost hundreds of millions of dollars in sales as a result of Defendants' consumer fraud.

93.     Defendants' consumer fraud is not merely causing Plaintiffs lost sales at an alarming rate. Plaintiffs continue to provide 100 minutes of service when promised, while Defendants are, on average, promising 100 minutes but providing only 60 minutes. Thus, for the promise of the same number of minutes, Plaintiffs' costs are millions of dollars greater than Defendants' because Plaintiffs provide 100% of what they promise to their customers while Defendants incur no cost whatsoever for the significant number of minutes that they promise consumers, but never deliver.

94.     As stated earlier, Plaintiffs' distributors demand that Plaintiffs offer rates competitive to Defendants. To compete with Defendants' deceptive rates, Plaintiffs – who are providing far more actual service - incur costs that Defendants do not. For instance, when Defendants offer a 100 minute call to El Salvador on a $2 card, they only deliver about 60% of

the call time to the consumer, thereby saving the additional costs that they otherwise would have incurred if they had delivered the other 40% of the promised minutes.  Plaintiffs, on the other hand, when offering 100 minutes on the same $2 card to El Salvador, deliver all 100 minutes and thus incur the additional costs in delivering the additional 40% of time that Defendants do not provide.  Therefore, to compete with Defendants' deceptive and misleading rates, Plaintiffs have to pay for 67% more (or 167% of what Defendants pay) in additional costs such as connection and termination fees.

95.     Due to Defendants' consumer fraud, Plaintiffs have lost millions of dollars and have incurred millions of dollars of additional costs.  Because Plaintiffs cannot compete with Defendants' rates, Plaintiffs will continue to lose millions of dollars in sales per month and incur millions of dollars in additional costs, losing a large portion of market share at an alarming rate.

96.     Defendants' consumer fraud is also causing irreparable harm to Plaintiffs' reputation.  Based on brand loyalty created by their high quality and low rate calling cards, Plaintiffs built a significant market share for themselves.  Defendants' widespread consumer fraud, however, has destroyed much of this market share, as consumers have been misled to ignore Plaintiffs' cards and instead purchase Defendants' calling cards by promises of long distance minutes that were never delivered by Defendants.  It is unclear whether Plaintiffs will ever be able to regain this lost market share.

## Facts Specific to CVT Advertising

97.     Upon information and belief, CVT creates, disseminates and distributes advertising to promote the sale of its prepaid calling cards.

98.     Upon information and belief, the CVT Advertising consists of point of purchase posters, television advertisements, radio advertisements, packaging and voice prompts.

99.     Upon information and belief, the CVT Advertising communicates to consumers

21

that they will receive certain numbers of minutes for a certain cost.

100.    Upon information and belief, the minutes actually delivered to consumers by CVT are significantly less than those marketed in the CVT Advertising.  Upon information and belief, the CVT Advertising is false, misleading and deceptive.


## Facts Specific to Dollar Phone Advertising

101.    Upon information and belief, Dollar Phone creates, disseminates and distributes advertising to promote the sale of its prepaid calling cards.

102.    Upon information and belief, the Dollar Phone Advertising consists of point of purchase posters, television advertisements, radio advertisements, packaging and voice prompts.

103.    Upon information and belief, the Dollar Phone Advertising communicates to consumers that they will receive certain numbers of minutes for a certain cost.

104.    Upon information and belief, the minutes actually delivered to consumers by Dollar Phone are significantly less than those marketed in the Dollar Phone Advertising.  Upon information and belief, the Dollar Phone Advertising is false, misleading and deceptive.

## Facts Specific to Epana Advertising

105.    Upon information and belief, Epana, creates, disseminates and distributes advertising to promote the sale of its prepaid calling cards.

106.    Upon information and belief, the Epana Advertising consists of point of purchase posters, television advertisements, radio advertisements, packaging and voice prompts.

107.    Upon information and belief, the Epana Advertising communicates to consumers that they will receive certain numbers of minutes for a certain cost.

108.    Upon information and belief, the minutes actually delivered to consumers by Epana are significantly less than those marketed in the Epana Advertising.  Upon information and

22

belief, the Epana Advertising is false, misleading and deceptive.

## Facts Specific to Locus Advertising

109.     Upon information and belief, Locus creates, disseminates and distributes advertising to promote the sale of its prepaid calling cards.

110.     Upon information and belief, the Locus Advertising consists of point of purchase posters, television advertisements, radio advertisements, packaging and voice prompts.  .

111.     Upon information and belief, the Locus Advertising communicates to consumers that they will receive certain numbers of minutes for a certain cost.

112.     Upon information and belief, the minutes actually delivered to consumers by Locus are significantly less than those marketed in the Locus Advertising.  Upon information and belief, the Locus Advertising is false, misleading and deceptive.

## Facts Specific to Total Call Advertising

113.     Upon information and belief, Total Call creates, disseminates and distributes advertising to promote the sale of its prepaid calling cards.

114.     Upon information and belief, the Total Call Advertising consists of point of purchase posters, television advertisements, radio advertisements, packaging and voice prompts.

115.     Upon information and belief, the Total Call Advertising communicates to consumers that they will receive certain numbers of minutes for a certain cost.

116.     Upon information and belief, the minutes actually delivered to consumers by Total Call are significantly less than those marketed in the Total Call Advertising.  Upon information and belief, the Total Call Advertising is false, misleading and deceptive.

## Facts Specific to STi Advertising

117.     Upon information and belief, STi, creates, disseminates and distributes advertising to promote the sale of its prepaid calling cards.

118.    Upon information and belief, the STi Advertising consists of point of purchase posters, television advertisements, radio advertisements, packaging and voice prompts.

119.    Upon information and belief, the STi Advertising communicates to consumers that they will receive certain numbers of minutes for a certain cost.

120.    Upon information and belief, the minutes actually delivered to consumers by STi are significantly less than those marketed in the STi Advertising. Upon information and belief, the STi Advertising is false, misleading and deceptive.

<u>**COUNT I**</u>

<u>***False Advertising Under the Lanham Act***</u>
<u>***(15 U.S.C. § 1125(a)(1))***</u>

121.    Plaintiffs repeat and re-allege the allegations set forth above in paragraphs 1 through 120 as if fully set forth herein.

122.    Defendants' advertising in connection with prepaid calling cards, as set forth above, constitutes use in commercial advertising or promotion of false and misleading descriptions of fact, and false and misleading representations of fact, which misrepresent the characteristics and qualities of their respective goods, in violation of 15 U.S.C. § 1125(a)(1).

123.    On information and belief, Defendants' acts of false advertising described herein were intended to cause and have caused deception of the public, misleading prospective purchasers as to the true characteristics and qualities of Defendants' products.

124.    Plaintiffs are without an adequate remedy at law.

125.    As a result of Defendants' acts as alleged above, Plaintiffs have suffered and will continue to suffer irreparable harm in the form of damage and injury to their business, reputation and goodwill, and will sustain serious loss of revenues, profits, and market share, and will continue to do so unless Defendants are preliminarily and permanently restrained and enjoined by the Court from further false advertising practices.

24

## COUNT II

### *False Advertising Under § 56:8 Of The New Jersey Statutes Annotated*

126.    Plaintiffs repeat and re-allege the allegations set forth above in paragraphs 1 through 125 as if fully set forth herein.

127.    Defendants' false and deceptive advertising constitutes unconscionable commercial practice, deception, fraud, false promise, misrepresentation, and/or a knowing, concealment or omission of material facts with intent that others rely upon such concealment or omission, in connection with the sale or advertisement of their respective prepaid calling cards, in violation of § 56:8 of the New Jersey Statutes Annotated.

128.    Upon information and belief, Defendants' false and deceptive advertising is likely to mislead consumers with respect to the number of minutes they receive for the price they pay.

129.    On information and belief, Defendants' acts of false advertising described herein were intended to cause and have caused deception of the public, misleading prospective purchasers as to the true characteristics and qualities of Defendants' products.

130.    Defendants' false and deceptive advertising has caused Plaintiffs to suffer an ascertainable loss in the form of lost sales and market share and additional costs incurred in attempting to compete with Defendants fraudulent business practices.

131.    Plaintiffs are without an adequate remedy at law.

132.    On information and belief, as a result of Defendants' acts as alleged above, consumers of the State of New Jersey and throughout the country have been deceived and misled.

133.    As a result of Defendants' acts as alleged above, Plaintiffs have suffered and will continue to suffer irreparable harm in the form of damage and injury to their business, reputation and goodwill, and have sustained serious loss of revenues, profits and market share, and will continue to do so, unless Defendants are preliminarily and permanently restrained and enjoined

by the Court from further false advertising practices.

## COUNT III

### *Deceptive Acts Under §349 Of The General Business Law Of New York*

134.    Plaintiffs repeat and re-allege the allegations set forth above in paragraphs 1 through 133 as if fully set forth herein.

135.    Defendants' false and deceptive advertising, as set forth above, is a deceptive practice in the conduct of their respective prepaid calling card businesses, in violation of Section 349 of the General Business Law of New York.

136.    Upon information and belief, Defendants' false and deceptive advertising is likely to materially mislead consumers with respect to the number of minutes they receive for the price they pay.

137.    On information and belief, Defendants' acts of false and deceptive advertising described herein were intended to cause and have caused deception of the public, materially misleading prospective purchasers as to the true characteristics and qualities of Defendants' products.

138.    Plaintiffs are without an adequate remedy at law.

139.    On information and belief, as a result of Defendants' acts as alleged above, consumers of the State of New York and throughout the country have been materially deceived and misled.

140.    As a result of Defendants' acts as alleged above, Plaintiffs have suffered and will continue to suffer irreparable harm in the form of damage and injury to their business, reputation and goodwill, and will sustain serious loss of revenues, profits, and market share, and will continue to do so unless Defendants are preliminarily and permanently restrained and enjoined by the Court from further false advertising practices.

## COUNT IV

### *False Advertising Under §350 Of The General Business Law Of New York*

141.    Plaintiffs repeat and re-allege the allegations set forth above in paragraphs 1 through 140 as if fully set forth herein.

142.    Upon information and belief, consumers rely upon Defendants' advertising in the form of posters, broadcast ads and voice prompts in purchasing Defendants' products.

143.    Defendants have engaged in false and deceptive advertising, as set forth above, in connection with of their respective prepaid calling card businesses, in violation of Section 350 of the General Business Law of New York.

144.    Upon information and belief, Defendants' false and deceptive advertising is likely to materially mislead consumers with respect to the number of minutes they receive for the price they pay.

145.    On information and belief, Defendants' acts of false advertising described herein were intended to cause and have caused deception of the public, materially misleading prospective purchasers as to the true characteristics and qualities of Defendants' products.

146.    Plaintiffs are without an adequate remedy at law.

147.    On information and belief, as a result of Defendants' acts as alleged above, consumers of the State of New York and throughout the country have been materially deceived and misled.

148.    As a result of Defendants' acts as alleged above, Plaintiffs have suffered and will continue to suffer irreparable harm in the form of damage and injury to their business, reputation and goodwill, and will sustain serious loss of revenues, profits, and market share and will continue to do so unless Defendants are preliminarily and permanently restrained and enjoined by the Court from further false advertising practices.

27

## COUNT V

### *False Advertising Under § 17500 Of The California Business & Professions Code*

149.    Plaintiffs repeat and re-allege the allegations set forth above in paragraphs 1 through 148 as if fully set forth herein.

150.    Defendants have engaged in false and deceptive advertising, as set forth above, in connection with of their respective prepaid calling card businesses, in violation of Section 17500 of the California Business & Professions Code.

151.    Upon information and belief, Defendants' false and deceptive advertising is likely to mislead consumers with respect to the number of minutes they receive for the price they pay.

152.    On information and belief, Defendants' acts of false advertising described herein were intended to cause and have caused deception of the public, misleading prospective purchasers or reasonable consumer as to the true characteristics and qualities of Defendants' products.

153.    Plaintiffs are without an adequate remedy at law.

154.    On information and belief, as a result of Defendants' acts as alleged above, consumers of the State of California and throughout the country have been deceived and misled.

155.    As a result of Defendants' acts as alleged above, Plaintiffs have suffered and will continue to suffer irreparable harm in the form of damage and injury to their business, reputation and goodwill, and will sustain serious loss of revenues, profits and market share, and will continue to do so unless Defendants are preliminarily and permanently restrained and enjoined by the Court from further false advertising practices.

## COUNT VI

### *Deceptive Practices Under § 17200 of the California Business & Professions Code*

156.    Plaintiffs repeat and re-allege the allegations set forth above in paragraphs 1

through 155 as if fully set forth herein.

157. Defendants have engaged in false and deceptive advertising, as set forth above, in connection with of their respective prepaid calling card businesses, in violation of Section 17200 of the California Business & Professions Code.

158. Upon information and belief, Defendants' false and deceptive advertising is likely to mislead consumers with respect to the number of minutes they receive for the price they pay.

159. On information and belief, Defendants' acts of false advertising described herein were intended to cause and have caused deception of the public, misleading prospective purchasers or reasonable consumers as to the true characteristics and qualities of Defendants' products.

160. Plaintiffs are without an adequate remedy at law.

161. On information and belief, as a result of Defendants' acts as alleged above, consumers of the State of California and throughout the country have been deceived and misled.

162. As a result of Defendants' acts as alleged above, Plaintiffs have suffered and will continue to suffer irreparable harm in the form of damage and injury to their business, reputation and goodwill, and will sustain serious loss of revenues, profits and market share, and will continue to do so unless Defendants are preliminarily and permanently restrained and enjoined by the Court from further false advertising practices.

## COUNT VII

### *Deceptive Practices Under § 501.204 of the Florida Annotated Statutes*

163. Plaintiffs repeat and re-allege the allegations set forth above in paragraphs 1 through 162 as if fully set forth herein.

164. Defendants have engaged in false and deceptive advertising, as set forth above, in connection with of their respective prepaid calling card businesses, in violation of Section

501.204 of the Florida Annotated Statutes.

165. Upon information and belief, Defendants' false and deceptive advertising is likely to mislead consumers with respect to the number of minutes they receive for the price they pay.

166. On information and belief, Defendants' acts of false advertising described herein were intended to cause and have caused deception of the public, misleading prospective purchasers as to the true characteristics and qualities of Defendants' products.

167. Plaintiffs are without an adequate remedy at law.

168. On information and belief, as a result of Defendants' acts as alleged above, consumers of the State of Florida and throughout the country have been deceived and misled.

169. As a result of Defendants' acts as alleged above, Plaintiffs have suffered and will continue to suffer irreparable harm in the form of damage and injury to their business, reputation and goodwill, and will sustain serious loss of revenues, profits and market share, and will continue to do so unless Defendants are preliminarily and permanently restrained and enjoined by the Court from further false advertising practices.

## COUNT VIII

### *False Advertising Under § 817.41 of the Florida Annotated Statutes*

170. Plaintiffs repeat and re-allege the allegations set forth above in paragraphs 1 through 169 as if fully set forth herein.

171. Defendants have engaged in false and deceptive advertising, as set forth above, in connection with of their respective prepaid calling card businesses, in violation of Section 817.41 of the Florida Annotated Statutes.

172. Upon information and belief, Defendants' false and deceptive advertising is likely to mislead consumers with respect to the number of minutes they receive for the price they pay.

173. On information and belief, Defendants' acts of false advertising described herein

were intended to cause and have caused deception of the public, misleading prospective purchasers as to the true characteristics and qualities of Defendants' products.

174.    Plaintiffs are without an adequate remedy at law.

175.    On information and belief, as a result of Defendants' acts as alleged above, consumers of the State of Florida and throughout the country have been deceived and misled.

176.    As a result of Defendants' acts as alleged above, Plaintiffs have suffered and will continue to suffer irreparable harm in the form of damage and injury to their business, reputation and goodwill, and will sustain serious loss of revenues, profits and market share, and will continue to do so unless Defendants are preliminarily and permanently restrained and enjoined by the Court from further false advertising practices.

### COUNT IX

### *Consumer Fraud and Deceptive Business Practices Under Chapter 815 of the Illinois Compiled Statutes Annotated*

177.    Plaintiffs repeat and re-allege the allegations set forth above in paragraphs 1 through 176 as if fully set forth herein.

178.    Defendants have engaged in false and deceptive advertising, as set forth above, in connection with of their respective prepaid calling card businesses, in violation of 815 ILCS §505/2.

179.    Upon information and belief, Defendants' false and deceptive advertising is likely to mislead consumers with respect to the number of minutes they receive for the price they pay.

180.    On information and belief, Defendants' acts of false advertising described herein were intended to cause and have caused deception of the public, misleading prospective purchasers as to the true characteristics and qualities of Defendants' products.

181.    Plaintiffs are without an adequate remedy at law.

182.    On information and belief, as a result of Defendants' acts as alleged above,

consumers of the State of Illinois and throughout the country have been deceived and misled.

183.     As a result of Defendants' acts as alleged above, Plaintiffs have suffered and will continue to suffer irreparable harm in the form of damage and injury to their business, reputation and goodwill, and will sustain serious loss of revenues, profits and market share, and will continue to do so unless Defendants are preliminarily and permanently restrained and enjoined by the Court from further false advertising practices.

## COUNT X

### *Deceptive Trade Practices Under Chapter 815 of the Illinois Compiled Statutes Annotated*

184.     Plaintiffs repeat and re-allege the allegations set forth above in paragraphs 1 through 183 as if fully set forth herein.

185.     Defendants have engaged in false and deceptive advertising, as set forth above, in connection with of their respective prepaid calling card businesses, in violation of 815 ILCS §510/2.

186.     Upon information and belief, Defendants' false and deceptive advertising is likely to mislead consumers with respect to the number of minutes they receive for the price they pay.

187.     On information and belief, Defendants' acts of false advertising described herein were intended to cause and have caused deception of the public, misleading prospective purchasers as to the true characteristics and qualities of Defendants' products.

188.     Plaintiffs are without an adequate remedy at law.

189.     On information and belief, as a result of Defendants' acts as alleged above, consumers of the State of Illinois and throughout the country have been deceived and misled.

190.     As a result of Defendants' acts as alleged above, Plaintiffs have suffered and will

continue to suffer irreparable harm in the form of damage and injury to their business, reputation and goodwill, and will sustain serious loss of revenues, profits and market share, and will continue to do so unless Defendants are preliminarily and permanently restrained and enjoined by the Court from further false advertising practices.

## **RELIEF SOUGHT**

**WHEREFORE**, Plaintiffs ask this Court to:

191. Grant a preliminary injunction and thereafter a permanent injunction restraining and enjoining Defendants and any principals, officers, agents, servants, employees, attorneys, representatives, successors and assigns of Defendants, and all those in privity, concert or participation with Defendants, from:

(i) using any false or misleading description that can or is likely to misrepresent to the trade or public, or individual members thereof, the characteristics or qualities of any product or service advertised, promoted, offered or sold by Defendants, including but not limited to descriptions on or in point of purchase advertising, television commercials, radio commercials, print advertising and voice prompts during the long distance access process;

(ii) engaging in any other activity constituting unfair competition with the Plaintiffs;

(iii) destroying or otherwise disposing of any of the hereinabove mentioned advertising, or any documents pertaining to such advertising or to any sales of products heretofore made;

(iv) assisting, aiding or abetting another person or business entity in engaging or performing any of the activities enumerated in subparagraphs (i) through (iii) above.

192.   Find that Defendants have used false representations and competed unfairly under federal law, and have damaged Plaintiffs by the acts complained of herein.

193.   Find that Defendants have competed unfairly under New Jersey law, and have damaged Plaintiffs by the acts complained of herein.

194.   Find that Defendants have competed unfairly under New York law, and have damaged Plaintiffs by the acts complained of herein.

195.   Find that Defendants have competed unfairly under California law, and have damaged Plaintiffs by the acts complained of herein.

196.   Find that Defendants have competed unfairly under Florida law, and have damaged Plaintiffs by the acts complained of herein.

197.   Find that Defendants have competed unfairly under Illinois law, and have damaged Plaintiffs by the acts complained of herein.

198.   Issue an order requiring recall of all false advertising distributed and requiring Defendants to issue notices (written or otherwise) to all current distributors of their products and all distributors with whom they have done business in the past twelve months.

199.   Direct Defendants to file with this Court and serve on counsel for Plaintiffs, within thirty (30) days after entry of the Preliminary Injunction, a written report under oath setting forth in detail the manner in which Defendants have complied with the foregoing paragraphs.

200.   Find Defendants liable and award to Plaintiffs monetary relief in an amount to be fixed by the Court in its discretion as just, including all damages sustained by Plaintiffs, and/or all of Defendants' profits or gains of any kind resulting from their unlawful practices, said amount to be trebled, and exemplary damages in view of the intentional nature of the acts complained of herein pursuant to 15 U.S.C. § 1117.

201.   Order an accounting and render judgment against Defendants for all profits

wrongfully derived by Defendants by reason of their false statements and representations and unfair competition.

202.    Award all damages to compensate Plaintiffs for Defendants' acts of false statements and representations and unfair competition.

203.    Require Defendants to pay Plaintiffs prejudgment and post-judgment interest at the applicable rates on all amounts awarded.

204.    Require Defendants to disseminate corrective advertising, at Defendants' expense, that informs consumers, the trade and the public at large of Defendants' unlawful conduct as complained of herein and of the judgment requiring Defendants to cease such unlawful conduct, and/or require Defendants to pay Plaintiffs' costs in producing and disseminating such corrective advertising.

205.    Grant to Plaintiffs such other and further relief as the Court may deem just, proper and equitable under the circumstances.

## **JURY DEMAND**

Plaintiffs demand a trial by Jury of all claims so triable.

Dated:   March 8, 2007

**ROBINSON & LIVELLI**
*Attorneys for Plaintiffs*
*IDT Telecom, Inc.*
*and Union Telecard Alliance, LLC*

By:  *s/Donald A. Robinson*
    Donald Robinson
    Two Penn Plaza East
    Newark, New Jersey 07105
    (973) 690-5400
    (973) 466-2760 – fax

Of Counsel:

Gerald J. Ferguson (GF 0370)
**BAKER & HOSTETLER LLP**
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Email: gferguson@bakerlaw.com