Donald Robinson (DR/8000)
**ROBINSON & LIVELLI**
Two Penn Plaza East
Newark, New Jersey 07105
(973) 690-5400
(973) 466-2760 – fax

*Attorneys for Plaintiffs IDT Telecom, Inc.
and Union Telecard Alliance, LLC*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IDT TELECOM, INC., and UNION TELECARD ALLIANCE, LLC,** | § |
| **Plaintiffs,** | § **CIVIL ACTION NO. 07-1076 (SDW)** |
| **v.** | § **MEMORANDUM OF LAW IN SUPPORT OF AN ORDER TO SHOW CAUSE (LOCAL CIVIL RULE 65.1) WHY A PRELIMINARY INJUNCTION SHOULD NOT BE ENTERED AND FOR EXPEDITED DISCOVERY** |
| **CVT PREPAID SOLUTIONS, INC.; DOLLAR PHONE SERVICES, INC.; DOLLAR PHONE ENTERPRISE, INC.; DOLLAR PHONE CORP.; DOLLAR PHONE ACCESS INC.; EPANA NETWORKS, INC.; LOCUS TELECOMMUNICATIONS, INC.; STI PHONECARD, INC.; TELCO GROUP, INC.; VOIP ENTERPRISES, INC.; FIND & FOCUS ABILITIES, INC.; TOTAL CALL INTERNATIONAL, INC.; and JOHN DOES 1-100,** | |
| **Defendants.** | |

**Cases**

Barre-Nat'l, Inc. v. Doshi, Civil Action No. 88-1847, 1988 U.S. Dist. LEXIS 3323 (D.N.J. Apr. 18, 1988) .................................................................................................. 8

Beilowitz v. GMC, 233 F. Supp. 2d 631 (D.N.J. 2002) .................................................. 9

Cox v. Sears Roebuck & Co., 138 N.J. 2, 647 A.2d 454 (1994) ..................................... 5

Diamond Triumph Auto Glass, Inc. v. Safelite Glass Corp., 344 F. Supp. 2d 936 (M.D. Pa. 2004) .................................................................................................. 5

Ediciones Quiroga S.L. v. Fall River Music, No. 93 Civ. 3914 (RPP), 1995 U.S. Dist. LEXIS 2641 (S.D.N.Y. 1995) .................................................................................. 6

Eli Lilly & Co. v. Roussel Corp., 23 F. Supp. 2d 460 (D.N.J. 1998) ............................... 5

Euro-Pro Corp. v. Tristar Prods., 172 F. Supp. 2d 567 (D.N.J. 2001) ............................ 8

GlaxoSmithKline Consumer Healthcare, L.P. v. Merix Pharm. Corp., Civ. No. 05-898 (DRD), 2005 U.S. Dist. LEXIS 30198 (D.N.J. Sept. 13, 2005) ........................................ 8

Gordon & Breach Science Publrs. S.A. v. Am. Inst. of Physics, 859 F. Supp. 1521 (S.D.N.Y. 1994) .................................................................................................. 5

Gucci America Inc., 2000 WL 1720738 .......................................................................... 9

Notaro v. Koch, 95 F.R.D. 403 (S.D.N.Y. 1982) ............................................................ 9

Novartis Consumer Health Incorporated v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co. 290 F.3rd 578 (3rd Cir. 2002) ...................................................... 7

Pharmacia & Upjohn Co. v. Ranbaxy Pharms. Inc., 274 F. Supp. 2d 597 (D.N.J. 2003) .............. 8

Riley v. New Rapids Carpet Center, 61 N.J. 218 at 225, 294 A.2d 7 (1972) ....................... 5

Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256 (2d Cir. 1995) ............................ 6

Synygy, Inc. v. Scott-Levin, Inc., 51 F. Supp. 2d 570 (E.D. Pa. 1999) ............................ 5

Yokohoma Tire Corp. v. Dealers Tire Supply, Inc., 202 F.R.D. 612 (D. Ariz. 2001) ............. 9

**Statutes**

15 U.S.C. § 1125(a)(1)(B) ............................................................................................ 4

18 U.S.C. §§ 1441 ...................................................................................................... 10

18 U.S.C. §§ 1443 ...................................................................................................... 10

Fed. R. Civ. P. 26(d) ................................................................................................................8

Fed. R. Civ. P. 30(a) ................................................................................................................8

Fed. R. Civ. P. 34(b) ................................................................................................................8

N.Y. Gen. Bus. §§ 349 ................................................................................................................5

New York Penal Law § 190.65(1)(a) ................................................................................................................10

## PRELIMINARY STATEMENT

Plaintiffs seek an order directing that Defendants CVT Prepaid Solutions, Inc.; Dollar Phone Services, Inc.; Dollar Phone Enterprise, Inc.; Dollar Phone Corp.; Dollar Phone Access Inc.; Epana Networks, Inc.; Locus Telecommunications, Inc.; STi Phonecard, Inc.; Telco Group, Inc.; VOIP Enterprises, Inc.; Find & Focus Abilities, Inc.; Total Call International, Inc.; and John Does 1-100 (collectively referenced hereafter as "Defendants"), show cause why a preliminary injunction should not be entered restraining and enjoining the Defendants from engaging in the conduct described below, and directing that expedited discovery take place prior to the scheduled hearing, if any, on Defendants' objections to the issuance of such injunction.

Defendants, providers of prepaid telephone calling card services, have engaged in a massive on-going fraudulent scheme, employing deceptive and fraudulent practices to supply consumers of prepaid calling cards with fewer calling card minutes than Defendants promise by, among other things, using their computer hardware and software to manipulate voice prompts to falsely identify the number of minutes that a customer has on a calling card and by falsely advertising the number of minutes provided on their posters and over the airwaves. Plaintiffs testing of Defendants' prepaid cards showed that, on average, Defendants are delivering approximately 60% of the minutes that they promise, cutting their costs in comparison with Plaintiffs' costs, and defrauding consumers at a rate of more than one million dollars ($1,000,000) a day.

By engaging in such conduct, Defendants have been able to offer ultra-competitive and unprecedented calling card rates making it virtually impossible for Plaintiffs to compete in the market without adopting these fraudulent practices, which Plaintiffs are not willing to do. Plaintiffs have experienced a drastic decline in sales, incurred genuine costs that the Defendants

do not incur such as connection and termination fees on the minutes Plaintiffs provide and Defendants do not provide and have suffered the loss of the good will that Plaintiffs have built up over the years because of the reputation Defendants have given to the calling card industry.

Plaintiffs are suffering irreparable harm from this fraudulent scheme: Plaintiffs' retail sales, in an industry where brand loyalty is key, are down more than 25% since the scheme went into operation and their market share has decreased. Plaintiffs' likelihood of success on the merits is quite high at the hearing, if any is needed, on the request for the injunction. That hearing, should Defendants' challenge the issuance of the injunction, will require the production of more evidence than is currently available to Plaintiffs.

The prepaid calling card industry is a highly automated, computer-based industry. Consumers rarely, if ever, interact with human beings in the normal course of using Defendants' products. To the contrary, when a consumer dials the toll-free number provided by Defendants, they are immediately connected to a computer, which prompts the consumer to enter a personal identification number ("PIN").

Upon verifying the PIN, Defendants' computers access information related to the consumers' card, and prompt the consumer to enter the telephone number they wish to be connected with. Then, based on various data points, including the value left on the card and the destination of the call, the computers execute algorithms. that generate the "remaining minutes" prompt that is at the heart of this case. The computer then connects the consumers to the telephone number, generally.

Because much of the information central to this litigation including the data points and the algorithms, is entirely computerized, it is essential that the computerized data that applies the rates to the calling cards and then generates the voice prompts be fully preserved and that

501293925.9                                    2

Plaintiffs have expedited access to the Defendants' computers and servers, and the data stored on them.

Expedited discovery is necessary to, among other things, uncover and preserve evidence of Defendants' practices with respect to the number of minutes represented to be available on their prepaid calling cards and the number of minutes of long distance service actually delivered. Such evidence is critical both to Plaintiffs' motion for a preliminary injunction and to the ultimate disposition of this case.

### STATEMENT OF FACTS

The facts supporting Plaintiffs' Motion for Expedited Discovery are set forth fully in the Complaint; however, for the Court's ease in considering Plaintiffs' Order to Show Cause, a brief summary follows.

Plaintiffs and Defendants are competitors in the business of providing prepaid calling card services to consumers throughout the United States. Beginning in Summer 2006, Plaintiffs noticed some of their competitors offering suspiciously low per-minute rates. Declaration of Gabi Schecter attached as Ex. A ("Schecter Decl.") at ¶ 28. Plaintiffs began seeing corresponding drops in their own sales volume, which drops became increasingly significant as more and more of their competitors began offering incredibly low rates. Schecter Decl. at ¶¶ 66-68. By November 2006, Plaintiffs could find no explanation of how their competitors could offer such rates and began testing their competitors' cards. Schecter Decl. at ¶ 28.

During the testing process, Plaintiffs found that Defendants' cards consistently failed to deliver the number of minutes advertised, sometimes shorting the consumer by as much as 50% or more. ¶¶ 29, 31, 38-43. Plaintiffs discovered that the minutes promised by the electronic voice prompts were significantly higher than the actual minutes delivered on the call. Schecter

Decl. ¶ 29. This systemic under-delivery of minutes could occur only because Defendants' manipulated their computer hardware and software to falsely inflate the represented number of minutes delivered to the consumer.

Defendants' unlawful conduct has allowed them to offer significantly lower prices on their calling cards than Plaintiffs. In order to stay competitive in the market, Plaintiffs have had to lower their per-minute rates, which has led to greatly decreased revenues and greatly increased costs compared to those of Defendants, as providing actual services costs money while not providing them, but merely lying about providing them, does not ¶¶ 71-72. In fact, Defendants defraud consumers of approximately $1 million a day. Schecter Decl. ¶ 64. The financial impact of the Defendants' false advertising of the number of minutes available for a particular price has been and continues to be devastating. *Id.* Plaintiffs have commenced this action seeking a preliminary injunction against Defendants' unlawful false and deceptive practices.

## ARGUMENT

Defendants have acted in violation of the Lanham Act's prohibition of any misleading description or representation of fact that "in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin" of their goods. 15 U.S.C. § 1125(a)(1)(B). The Lanham Act provides a remedy for any false statements made in the context of "commercial advertising or promotion". 15 U.S.C. § 1125(a)(1)(B) (2004). False "commercial advertising or promotion" includes any:

> (1) commercial speech; (2) made by a defendant who is in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to purchase the defendant's goods or services; and (4) disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 480 (D.N.J. 1998) (citing *Gordon & Breach Science Publrs. S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1535-36 (S.D.N.Y. 1994) ("*Gordon & Breach I*")); *see also Diamond Triumph Auto Glass, Inc. v. Safelite Glass Corp.*, 344 F. Supp. 2d 936, 941 (M.D. Pa. 2004) (applying *Gordon & Breach I* test to determine whether representations at issue were "commercial advertising or promotion" under Lanham Act); *Synygy, Inc. v. Scott-Levin, Inc.*, 51 F. Supp. 2d 570, 576 (E.D. Pa. 1999) (same).

Plaintiffs also have standing to bring claims under the New Jersey Consumer Fraud Act ("NJCFA"). To establish a violation of the NJCFA, a plaintiff must show an unlawful practice and ascertainable loss. *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 35-36, 647 A.2d 454 (1994). Competitors may assert deceptive practices claims against competitors who distort the marketplace with dishonest practices because, the law should not require a company to engage in dishonest practices merely to compete in the market. "The reputable vendor . . . has a stake in the suppression of dishonest competition." *Riley v. New Rapids Carpet Center*, 61 N.J. 218 at 225, 294 A.2d 7 (1972);

Plaintiffs likewise have standing under New York General Business Law seeking remedies for Defendants false and/or deceptive business. Section 349 of that Law states as follows:

> Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.

Section 350 of that Law states:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

Business competitors of a company that engages in deceptive practices and false advertising in violation of N.Y. Gen. Bus. §§ 349 and 350 have standing to bring suit against that

S01293925.9

5

company so long as the gravamen of the complaint is harm to consumers. *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256 (2d Cir. 1995); *Ediciones Quiroga S.L. v. Fall River Music*, No. 93 Civ. 3914 (RPP), 1995 U.S. Dist. LEXIS 2641, at *23-24 (S.D.N.Y. 1995).

501293925.9

6

## AN ORDER TO SHOW CAUSE SHOULD BE ENTERED

This is an application for an Order to Show Cause why a preliminary injunction should not issue. It is not the brief on whether the preliminary injunction itself should be issued. The legal standard for issuance of a preliminary injunction is set forth in *Novartis Consumer Health Incorporated v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.* 290 F.3rd 578 (3rd Cir. 2002), which lists as factors: (1) The likelihood that the moving party will succeed on the merits; (2) the extent to which the moving party will suffer irreparable harm without injunctive relief; (3) the extent to which the non-moving party will suffer irreparable harm if the injunction is issued; and (4) the public interest. *Id.* at 586.

In this case, each factor is more than adequately met even at this early stage of the proceedings. The likelihood of success is great, as prior testing of defendants' pre-paid telephone cards makes clear that virtually no consumer can obtain the minutes that are promised. The damage to Plaintiffs is massive and accelerating, as Plaintiffs lose market share and are compelled to provide 100 minutes of service when they promise 100 minutes, compared with the Defendants, who provide approximately 60 minutes, on average, for the same promised 100 minutes. Defendants will suffer no irreparable harm if they are enjoined from engaging in systematic fraud and compelled to provide the services that they claim to be providing. And the public interest is very much implicated as Defendants are largely defrauding immigrants, for whom English is a second language, in an amount more than one million dollars each day.

## PLAINTIFFS ARE ENTITLED TO EXPEDITED DISCOVERY

In order to gather additional evidence in support of its motion for a preliminary injunction, Defendants must be required to preserve all of its computer hardware and software

501393925.9

7

and documents, including email and advertisements, in their current state and Plaintiffs must be allowed to conduct expedited discovery pursuant to the Federal Rules of Civil Procedure.

## I.    APPLICABLE LEGAL STANDARDS

The federal rules expressly authorize a court to permit parties to depart from the usual schedule and sequence of discovery where, as here, a party will be prejudiced by the normal pace of pretrial procedures.  Fed. R. Civ. P. 26(d), 30(a), and 34(b).  Such discovery "will be appropriate in some cases, *such as those involving requests for a preliminary injunction.*"  Fed. R. Civ. P. 26 Advisory Committee's Note (emphasis added).

In connection, the U.S. District Court for the District of New Jersey has routinely ordered expedited discovery to permit the parties to prepare for an immediate hearing on a preliminary injunction in order to prevent further injury to the plaintiff in cases involving infringement of intellectual property rights, unfair competition claims, and/or Lanham Act claims, including false advertising. *See, e.g., GlaxoSmithKline Consumer Healthcare, L.P. v. Merix Pharm. Corp.*, Civ. No. 05-898 (DRD), 2005 U.S. Dist. LEXIS 30198, at *1 (D.N.J. Sept. 13, 2005) (expedited discovery granted in connection with motion for preliminary injunction on claims for false advertising under Section 43(a) of the Lanham Act and the New Jersey Consumer Fraud Act); *Pharmacia & Upjohn Co. v. Ranbaxy Pharms. Inc.*, 274 F. Supp. 2d 597, 600 (D.N.J. 2003), *rev'd in part on other grounds*, 85 Fed. Appx. 205 (Fed. Cir. 2003) (expedited discovery granted in connection with preliminary injunction motion in patent case); *Euro-Pro Corp. v. Tristar Prods.*, 172 F. Supp. 2d 567, 569 (D.N.J. 2001) (expedited discovery granted in connection with motion for preliminary injunction in trade dress infringement case); *Barre-Nat'l, Inc. v. Doshi*, Civil Action No. 88-1847, 1988 U.S. Dist. LEXIS 3323, at *1 (D.N.J. Apr. 18, 1988) (expedited discovery granted in connection with motion for preliminary injunction in unfair competition and

501293925.9                                    8

misappropriation of trade secrets case).

The courts are split on the standard to apply to determine whether expedited discovery should be granted. Some courts have applied the *Notaro* four-prong test, akin to the preliminary injunction relief standard, *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982) (requiring showing of irreparable injury, some probability of success on the merits, some connection between the expedited discovery and the avoidance of the irreparable injury, and some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted). Others apply the less rigorous good-cause standard applied in *Yokohoma Tire Corp. v. Dealers Tire Supply, Inc.*, 202 F.R.D. 612, 614 (D. Ariz. 2001). Regardless of which standard is applied, Plaintiffs prevail.

There is ample evidence that Plaintiffs have lost considerable market share as a result of Defendants' systematic and ongoing fraud. Plaintiffs sales are decreasing by millions of while Defendants have been steadily increasing their market share by lying to consumers. *See Beilowitz v. GMC*, 233 F. Supp. 2d 631, 644 – 45 (D.N.J. 2002) (holding that where economic damage would be severe, that risk provides the basis for a finding of irreparable harm). This injury is the direct result of Defendants' manipulation of their computer hardware and software and public advertising, copies of which will be found in Defendants' possession and control. *Gucci America Inc. v. Daffy's*, No. CIV.A.00-4463, 2000 WL 1720738, at * 6 (D.N.J. Nov. 14, 2000) (expedited discovery granted where irreparable injury that justified relief flowed from the alleged activities of unknown third parties). Moreover, the balancing of the harms weighs decisively in Plaintiffs' favor when the minimal burden Defendants will incur to respond to Plaintiffs' discovery requests is contrasted against the money Plaintiffs are losing in revenues on a daily basis. Additionally, Plaintiffs are likely to succeed on the merits of this matter as

Defendants' demonstrably and patently unlawful conduct violates a number of laws.[1] Plaintiffs therefore also are able to show that there is good cause to permit expedited discovery here.

## II.    EXPEDITED DISCOVERY IS WARRANTED HERE

In the instant case, it is imperative that the expedited discovery procedures authorized by the Federal Rules of Civil Procedure be ordered by the Court in connection with Plaintiffs' motion for preliminary injunctive relief against Defendants' violations of the Lanham Act and other applicable laws.

Normal discovery procedures are inadequate because information contained on Defendants' computer hardware and software used to deceive its customers are critical to proving their illegal, deceptive and fraudulent conduct, but can be easily destroyed. Furthermore, Defendants' misrepresentations as to the minutes available on their prepaid calling cards are already causing great harm to Plaintiffs *and* to the consuming public, as set forth in the Schecter Affidavit. As explained therein, Defendants' false claims are diverting sales away from Plaintiffs to Defendants, and the continued use and dissemination of the false claims threatens Plaintiffs' substantial investment in the goodwill in their prepaid calling cards and the market share they have achieved.

As soon as possible, Plaintiffs must be permitted to ascertain information and preserve evidence surrounding Defendants' practices with respect to the number of minutes represented to be available on their prepaid calling cards and the number of minutes of long distance service actually delivered. Such discovery is necessary in order to: (i) determine the full extent of Defendants' misrepresentations and their knowledge thereof, (ii) identify additional defendants, and (iii) further document Plaintiffs' need for preliminary injunctive relief.

---

[1] See New York Penal Law § 190.65(1)(a) (scheme to defraud ten or more persons); 18 U.S.C. §§ 1441, 1443 (mail

(continue)

Based on the authorities discussed above, the facts set forth in the Complaint, and the Schecter Affidavit filed herewith, it is clear that Plaintiffs are entitled to an order allowing them to conduct expedited discovery.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their Order to Show Cause Why a Preliminary Injunction Should Not Be Entered.

Dated:  March 8, 2007.

Respectfully submitted,

**ROBINSON & LIVELLI**
*Attorneys for Plaintiffs IDT Telecom, Inc.*
*and Union Telecard Alliance, LLC*

By: _____
Donald Robinson
Two Penn Plaza East
Newark, New Jersey 07105
(973) 690-5400
(973) 466-2760 – fax

Of counsel:

Gerald J. Ferguson (0370)
**BAKER & HOSTETLER LLP**
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Email: gferguson@bakerlaw.com

_____

(continued)
and wire fraud).

501293925.9                                     11