Eric R. Breslin (ERB -4487)
**DUANE MORRIS LLP**
744 Broad Street
Suite 1200
Newark, New Jersey 07102-3889
(973) 424-2000 (telephone)
(973) 424-2001 (facsimile)

Jeffrey M. Eilender (JME -8250)
David J. Katz (DJK -4729)
**SCHLAM STONE & DOLAN LLP**
26 Broadway
19th Floor
New York, NY 10004
(212) 344-5400 (telephone)
(212) 344-7677 (facsimile)

*Attorneys for Defendants Dollar Phone Services, Inc.,*
*Dollar Phone Enterprises, Inc., Dollar Phone Corporation,*
*and Dollar Phone Access, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IDT TELECOM, INC. and UNION TELECARD ALLIANCE, LLC,** <br><br> *Plaintiff(s),* <br><br> -against- <br><br> **CVT PREPAID SOLUTIONS, INC., ET AL.,** <br><br> *Defendants.* | Civil Action No.: 07-1076 (SDW)(MCA) <br><br> **ANSWER OF THE DOLLAR PHONE DEFENDANTS TO THE FIRST AMENDED COMPLAINT WITH COUNTERCLAIMS, THIRD-PARTY COMPLAINT AND DEMAND FOR A JURY TRIAL** |

**DOLLAR PHONE SERVICES, INC., DOLLAR PHONE ENTERPRISES, INC., DOLLAR PHONE CORPORATION and DOLLAR PHONE ACCESS, INC.,**

*Third-Party Plaintiffs,*

*-against-*

**HOWARD S. JONAS, JAMES A. COURTER, LIORE ALROY, GABI SCHECTER, CARLOS GOMEZ, JOSEPH FARBER, SAMUEL JONAS, MICHAEL LIEBOV, YONA KATZ, JACK LERER, MORRIS LICHTENSTEIN, and IDT CORPORATION,**

*Third-Party Defendants.*

Defendants/Third-Party Plaintiffs Dollar Phone Services, Inc., Dollar Phone Enterprises, Inc., Dollar Phone Corporation, and Dollar Phone Access, Inc. (collectively "Dollar Phone"), by and through their attorneys, as for their Answer to the First Amended Complaint of Plaintiffs IDT Telecom, Inc., and Union Telecard Alliance, LLC, dated April 2, 2007, and Demand for a Jury Trial, upon information and belief, respond as follows:

## NATURE OF THE ACTION

1.     Denies the allegations of this paragraph as to Dollar Phone, except admits that the second sentence calls for legal conclusion to which no response is required.

2.     Denies the allegations of this paragraph as they relate to Dollar Phone.  Dollar Phone lacks knowledge or information necessary to form a belief as to the formatting allegations of this paragraph.

3.     Denies the allegations of this paragraph as they relate to Dollar Phone.  Dollar Phone lacks knowledge or information necessary to form a belief as to the formatting allegations of this paragraph.

4.      Denies the allegations of this paragraph as they relate to Dollar Phone.   Dollar Phone lacks knowledge or information necessary to form a belief as to the formatting allegations of this paragraph.

## INTRODUCTION

5.      Denies knowledge or information necessary to form a belief as to the allegations of this paragraph, except admits that Dollar Phone provides pin numbers to other parties which enable them to distribute prepaid calling cards.

6.      Denies the allegations of this paragraph, except admits that certain calling cards have voice prompts and direct the Court to the calling cards at issue.

7.      Denies knowledge or information necessary to form a belief as to the allegations of this paragraph as to any party other than Dollar Phone, except denies all allegations in the paragraph as to Dollar Phone.

8.      Denies knowledge or information necessary to form a belief as to the allegations of this paragraph as to any parties other than Dollar Phone, except denies all allegations in the paragraph as to Dollar Phone, and specifically denies any assertion that Plaintiffs ever had any "reputation of being the best value provider of quality calling cards," or any reputation to speak of other than as entities that have defrauded consumers and engaged in persistent bribery.

## PARTIES AND JURISDICTION

9.      Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

10.      Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

11.      Denies knowledge or information necessary to form a belief as to the allegations

of this paragraph.

12.     Admits the allegations of this paragraph.

13.     Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

14.     Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

15.     Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

16.     Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

17.     Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

18.     Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

19.     Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

20.     Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

21.     Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

22.     Denies the allegations of this paragraph, except admits that they state legal conclusions for which no response is necessary.

23.     Denies the allegations of this paragraph, except admits that they state legal conclusions for which no response is necessary.

24.     Denies the allegations of this paragraph, except admits that they state legal conclusions for which no response is necessary.

25.     Denies the allegations of this paragraph, except admits that they state legal conclusions for which no response is necessary.

## FACTS

### The Parties

26.     Denies knowledge or information necessary to form a belief as to the allegations of this paragraph, except admits that IDT is "recognized" for defrauding consumers in the manner set forth in the counterclaims and Third-Party Complaint and engaging in bribery and violations of FCC Rules and for being under investigation by the SEC and IRS.

27.     Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

28.     Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

29.     Denies the allegations of this paragraph, except admits that Dollar Phone provides pin numbers to certain parties that enables them to provide prepaid calling cards.

30.     Denies the allegations of this paragraph.

31.     Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

32.     Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

33.     Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

34.     Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

35.     Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

36.     Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

37.     Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

38.     Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

39.     Denies knowledge or information necessary to form a belief as to the allegations of this paragraph with respect to any party other than Dollar Phone, and denies the allegations as to Dollar Phone.

### IDT'S And UTA'S Prepaid Calling Card Business

40.     Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

41.     Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

42.     Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

## The Pre Paid Calling Card Industry

43.    Denies the allegations of this paragraph, as to Dollar Phone, except admits that certain calling cards have voice prompts and directs the Court to the calling cards at issue, and otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

44.    Denies the allegations of this paragraph, except admits that certain calling cards have voice prompts and directs the Court to the calling cards at issue.

45.    Denies the allegations of this paragraph, except denies knowledge or information necessary to form a belief as to any IDT survey.

46.    Denies the allegations of this paragraph, except admits that certain calling cards have voice prompts and directs the Court to the calling cards at issue.

47.    Denies the allegations of this paragraph, except denies knowledge or information necessary to form a belief as to what Plaintiffs spent on advertising.

48.    Denies the allegations of this paragraph, except admits that Plaintiffs do circulate posters and that these posters contain false representations regarding their cards.

49.    Denies the allegations of this paragraph.

50.    Denies the allegations of this paragraph, except admits that Plaintiffs make false representations regarding their cards.

51.    Denies knowledge or information necessary to form a belief as to the allegations of this paragraph, except denies that Plaintiffs have "garnered substantial good will."

52.    Denies the allegations of this paragraph, except admits that it purports without any basis to characterize the industry and the customers.

53.    Denies the allegations of this paragraph.

54.     Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

55.     Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

56.     Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

57.     Denies the allegations of this paragraph.

58.     Denies the allegations of this paragraph.

59.     Denies the allegations of this paragraph as to Dollar Phone and denies knowledge or information necessary to form a belief as to the other Defendants.

60.     Denies the allegations of this paragraph as to Dollar Phone and denies knowledge or information necessary to form a belief as to the other Defendants.

### Discovery Of Defendants' Consumer Fraud

61.     Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

62.     Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

63.     Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

64.     Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

65.     Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

66.    Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

## Plaintiffs' Internal Testing Confirms
## Defendants' False And Deceptive Practices

67.    Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

68.    Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

69.    Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

70.    Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

71.    Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

72.    Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

73.    Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

74.    Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

75.    Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

76.    Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

77.    Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

78.    Denies the allegations of this paragraph.

79.    Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

80.    Denies the allegations of this paragraph as to Dollar Phone and otherwise denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

81.    Denies the allegations of this paragraph as to Dollar Phone and otherwise denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

82.    Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

**Independent Testing Confirms Defendants'
False And Deceptive Practices**

83.    Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

84.    Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

85.    Denies the allegations of this paragraph as to Dollar Phone and otherwise denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

86.    Denies the allegations of this paragraph as to Dollar Phone and otherwise denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

87.   Denies the allegations of this paragraph as to Dollar Phone and otherwise denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

88.   Denies the allegations of this paragraph as to Dollar Phone and otherwise denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

### Defendants' Consumer Fraud Has Irreparably Harmed Plaintiffs' Reputation, Caused Lost Sales, And Cause Plaintiffs To Incur Exorbitant Costs To Compete With Defendants' Deceptive Rates

89.   Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

90.   Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

91.   Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

92.   Denies the allegations of this paragraph.

93.   Denies the allegations of this paragraph.

94.   Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

95.   Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

96.   Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

### Facts Specific to CVT Advertising

97.   Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

98.    Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

99.    Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

100.    Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

### Facts Specific to Dollar Phone Advertising

101.    Denies the allegations of this paragraph, except states that Dollar Phone's advertising speaks for itself and directs the Court to the materials at issue.

102.    Denies the allegations of this paragraph, except admits that Dollar Phone engages in certain advertising, but that such advertising does not include voice prompts.

103.    Denies the allegations of this paragraph, except admits that Dollar Phone's advertising speaks for itself and directs the Court to the materials at issue.

104.    Denies the allegations of this paragraph.

### Facts Specific to Epana Advertising

105.    Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

106.    Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

107.    Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

108.    Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

### Facts Specific to Locus Advertising

109.    Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

110.    Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

111.    Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

112.    Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

### Facts Specific to Total Call Advertising

113.    Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

114.    Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

115.    Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

116.    Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

### Facts Specific to STi Advertising

117.    Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

118.   Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

119.   Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

120.   Denies knowledge or information necessary to form a belief as to the allegations of this paragraph.

## COUNT I

### *False Advertising Under the Lanham Act*
### *(15 U.S.C. § 1125(a)(1))*

121.   Dollar Phone repeats and re-alleges the responses set forth in all the paragraphs above as if fully set forth herein.

122.   Denies the allegations of this paragraph.

123.   Denies the allegations of this paragraph.

124.   Denies the allegations of this paragraph.

125.   Denies the allegations of this paragraph.

## COUNT II

### *False Advertising Under § 56:8 Of The New Jersey Statutes Annotated*

126.   Dollar Phone repeats and re-alleges the responses set forth in all the paragraphs above as if fully set forth herein.

127.   Denies the allegations of this paragraph.

128.   Denies the allegations of this paragraph.

129.   Denies the allegations of this paragraph.

130.   Denies the allegations of this paragraph.

131.   Denies the allegations of this paragraph.

132.    Denies the allegations of this paragraph.

133.    Denies the allegations of this paragraph.

## COUNT III

### *Deceptive Acts Under § 349 Of The General Business Law Of New York*

134.    Dollar Phone repeats and re-alleges the responses set forth in all the paragraphs above as if fully set forth herein.

135.    Denies the allegations of this paragraph.

136.    Denies the allegations of this paragraph.

137.    Denies the allegations of this paragraph.

138.    Denies the allegations of this paragraph.

139.    Denies the allegations of this paragraph.

140.    Denies the allegations of this paragraph.

## COUNT IV

### *False Advertising Under § 350 Of The General Business Law Of New York*

141.    Dollar Phone repeats and re-alleges the responses set forth in all the paragraphs above as if fully set forth herein.

142.    Denies the allegations of this paragraph.

143.    Denies the allegations of this paragraph.

144.    Denies the allegations of this paragraph.

145.    Denies the allegations of this paragraph.

146.    Denies the allegations of this paragraph.

147.    Denies the allegations of this paragraph.

148.    Denies the allegations of this paragraph.

## COUNT V

### *False Advertising Under § 17500 Of The California Business& Professions Code*

149.   Dollar Phone repeats and re-alleges the responses set forth in all the paragraphs above as if fully set forth herein.

150.   Denies the allegations of this paragraph.

151.   Denies the allegations of this paragraph.

152.   Denies the allegations of this paragraph.

153.   Denies the allegations of this paragraph.

154.   Denies the allegations of this paragraph.

155.   Denies the allegations of this paragraph.

## COUNT VI

### *False Advertising Under § 17200 Of The California Business& Professions Code*

156.   Dollar Phone repeats and re-alleges the responses set forth in all the paragraphs above as if fully set forth herein.

157.   Denies the allegations of this paragraph.

158.   Denies the allegations of this paragraph.

159.   Denies the allegations of this paragraph.

160.   Denies the allegations of this paragraph.

161.   Denies the allegations of this paragraph.

162.   Denies the allegations of this paragraph.

## COUNT VII

### *False Advertising Under § 501.204 Of The Florida Annotated Statutes*

163.   Dollar Phone repeats and re-alleges the responses set forth in all the paragraphs above as if fully set forth herein.

164.   Denies the allegations of this paragraph.

165.   Denies the allegations of this paragraph.

166.   Denies the allegations of this paragraph.

167.   Denies the allegations of this paragraph.

168.   Denies the allegations of this paragraph.

169.   Denies the allegations of this paragraph.

## COUNT VIII

### *False Advertising Under § 817.41 Of The Florida Annotated Statutes*

170.   Dollar Phone repeats and re-alleges the responses set forth  in all the paragraphs above as if fully set forth herein.

171.   Denies the allegations of this paragraph.

172.   Denies the allegations of this paragraph.

173.   Denies the allegations of this paragraph.

174.   Denies the allegations of this paragraph.

175.   Denies the allegations of this paragraph.

176.   Denies the allegations of this paragraph.

## COUNT IX

### *Consumer Fraud and Deceptive Business Practices Under Chapter 815 Of the Illinois Compiled Statutes Annotated*

177.   Dollar Phone repeats and re-alleges the responses set forth in all the paragraphs above as if fully set forth herein.

178.   Denies the allegations of this paragraph.

179.   Denies the allegations of this paragraph.

180.   Denies the allegations of this paragraph.

181.   Denies the allegations of this paragraph.

182.   Denies the allegations of this paragraph.

183.   Denies the allegations of this paragraph.

## COUNT X

### *Deceptive Trade Practices Under Chapter 815 of the Illinois Compiled Statutes Annotated*

184.   Dollar Phone repeats and re-alleges the responses set forth in all the paragraphs above as if fully set forth herein.

185.   Denies the allegations of this paragraph.

186.   Denies the allegations of this paragraph.

187.   Denies the allegations of this paragraph.

188.   Denies the allegations of this paragraph.

189.   Denies the allegations of this paragraph.

190.   Denies the allegations of this paragraph.

## RELIEF SOUGHT

191.   Denies the allegations of this paragraph.

192.   Denies the allegations of this paragraph.

193.   Denies the allegations of this paragraph.

194.   Denies the allegations of this paragraph.

195.   Denies the allegations of this paragraph.

196.   Denies the allegations of this paragraph.

197.   Denies the allegations of this paragraph.

198.   Denies the allegations of this paragraph.

199.   Denies the allegations of this paragraph.

200.   Denies the allegations of this paragraph.

201.   Denies the allegations of this paragraph.

202.   Denies the allegations of this paragraph.

203.   Denies the allegations of this paragraph.

204.   Denies the allegations of this paragraph.

205.   Denies the allegations of this paragraph.

## AFFIRMATIVE DEFENSES

### AS AND FOR A FIRST, SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE

The First Amended Complaint fails to state a claim upon which relief may be given.

### AS AND FOR A SECOND, SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE

The Plaintiffs lack standing including constitutional and prudential standing under the various statutes that they invoke, to assert the claims herein.

### AS AND FOR A THIRD, SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE

Any equitable or monetary relief is precluded by Plaintiffs' own unclean hands.

### AS AND FOR A FOURTH, SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE

The claims herein are barred by the applicable statute of limitations and/or laches.

### AS AND FOR A FIFTH, SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE

Plaintiffs have failed to mitigate damages.

### AS AND FOR A SIXTH, SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE

To the extent any liability of Dollar Phone exists under of any of the claims herein, it is extinguished or reduced by the obligations and liability Plaintiffs have to Dollar Phone under the doctrines of set-off and/or recoupment or any other doctrine or legal concept that reduces or extinguishes Dollar Phone liability because of any obligation or liability to it by Plaintiffs.

### AS AND FOR A SEVENTH, SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE

To the extent any liability of Dollar Phone exists under any of the claims, Dollar Phone is entitled to contribution or indemnification from the other defendants, any defendant who has settled and other parties not included in this action.

### AS AND FOR AN EIGHTH, SEPARATE AND
### DISTINCT AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrines of *res judicata*, settlement and release, waiver and accord and satisfaction, because of, among other things, the settlement agreement entered into between Dollar Phone and Plaintiffs.

### AS AND FOR AN NINTH, SEPARATE AND
### DISTINCT AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of estoppel.

### AS AND FOR A TENTH, SEPARATE AND
### DISTINCT AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by their own assumption of risk and contributory negligence and injuries caused to them by their own "servants."

### AS AND FOR A ELEVENTH, SEPARATE AND
### DISTINCT AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by Plaintiffs' own fraud and the illegality of the transactions entered into by Plaintiffs.

### AS AND FOR A TWELFTH, SEPARATE AND
### DISTINCT AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by any other applicable equitable doctrines not specifically referenced herein.

### AS AND FOR A THIRTEENTH, SEPARATE AND
### DISTINCT AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by application of the Voluntary Payment doctrine

### AS AND FOR A FOURTEENTH, SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the failure to exercise reasonable efforts to avoid or minimize the alleged injury purportedly suffered.

### AS AND FOR A FIFTEENTH, SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because any conduct by Dollar Phone was at all times justified and privileged and did not result in any wrongful benefit or enrichment to Dollar Phone.

### AS AND FOR A SIXTEENTH, SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because the injuries and damages claimed by Plaintiffs were not legally or proximately caused by any act or omission of Dollar Phone.

### AS AND FOR A SEVENTEENTH, SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE

Plaintiffs' claims for injunctive and other equitable relief are barred because the alleged cause of action in the First Amended Complaint seeks to apply the statutes identified in a manner that would impermissibly enlarge the powers of the judiciary, in contravention of the Due Process and Commerce Clauses of the United States Constitution, the pertinent state constitutions and the federal and state statutes that form the basis of Plaintiffs' claims and applicable federal and state case law by purporting to expand the Court's jurisdiction, including the power to order a defendant to pay restitution to for injuries allegedly suffered by non-parties.

### AS AND FOR A EIGHTEENTH, SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE

Plaintiffs' claims for injunctive and other equitable relief are barred because Plaintiffs have an adequate remedy at law.

### AS AND FOR A NINETEENTH, SEPARATE AND
### DISTINCT AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because they are not brought by competent Plaintiffs for the benefit of the asserted injured persons.

### AS AND FOR A TWENTIETH, SEPARATE AND
### DISTINCT AFFIRMATIVE DEFENSE

Plaintiffs' claims for injunctive and other equitable relief are barred because Plaintiffs' asserted injuries are too remote, attenuated and/or speculative to allow recover or other relief.

### AS AND FOR A TWENTY-FIRST, SEPARATE AND
### DISTINCT AFFIRMATIVE DEFENSE

Plaintiffs' claims for injunctive and other equitable relief are barred to the extent they are not consistent with, or are pre-empted or precluded by, applicable federal law, including without limitation, the United States Constitution.

### AS AND FOR A TWENTY-SECOND, SEPARATE AND
### DISTINCT AFFIRMATIVE DEFENSE

Plaintiffs' claims for injunctive and other equitable relief are barred to the extent Plaintiffs seek the application of state law extraterritorially to persons or conduct outside the pertinent states identified, in violation of the due process and commerce clauses of the United States Constitution, the pertinent State Constitutions and the statutes that form the basis of Plaintiffs' claim and the applicable federal and state case law.

### AS AND FOR A TWENTY-THIRD, SEPARATE AND
### DISTINCT AFFIRMATIVE DEFENSE

Plaintiffs' claims for injunctive and other equitable relief are barred because New Jersey, New York and California, Illinois and Florida state statutes do not authorize actions to be brought by any person purporting to act in the interest of the General Public.

## AS AND FOR A TWENTY-FOURTH, SEPARATE AND
## DISTINCT AFFIRMATIVE DEFENSE

Dollar Phone hereby adopts and incorporates by this reference any and all other affirmative defenses asserted or to be asserted by any other Defendant or Third-Party Defendant in this proceeding to the extent any such defense is applicable to Dollar Phone.

## AS AND FOR A TWENTY-FIFTH, SEPARATE AND
## DISTINCT AFFIRMATIVE DEFENSE

Dollar Phone presently lacks sufficient knowledge or information which will form a belief as to whether it may have available other as yet unstated additional and/or affirmative defenses. Dollar Phone reserves the right to assert additional and/or affirmative defenses.

## COUNTERCLAIMS AND THIRD-PARTY CLAIMS

Defendants Dollar Phone Services, Inc., Dollar Phone Enterprises, Inc., Dollar Phone Corporation, and Dollar Phone Access, Inc. (collectively, "Dollar Phone"), by and through their undersigned counsel, for their counterclaims and third-party complaint against Plaintiffs IDT Telecom, Inc. ("Plaintiff IDT") and Union Telecard Alliance, LLC ("UTA") and Third-Party Defendants Howard S. Jonas, James A. Courter, Liore Alroy, Gabi Schecter, Carlos Gomez, Joseph Farber, Samuel Jonas, Michael Liebov, Yona Katz, Jack Lerer, Morris Lichtenstein, James Courter, and IDT Corporation (collectively with IDT Telecom, Inc., "IDT") allege as follows:

## THE BACKGROUND RELEVANT TO THE
## COUNTERCLAIMS AND THE
## THIRD-PARTY COMPLAINT

1.      On June 30, 2008, Dollar Phone filed a motion to dismiss the First Amended Complaint in this action which explained that none of the causes of action asserted by Plaintiffs therein stated a valid claim. The Court declined to adjudicate that motion at this time and instead

administratively terminated it without prejudice to the motion being renewed at the conclusion of discovery. As a result, Dollar Phone is now required to answer the First Amended Complaint prior to any judicial determination as to the legal sufficiency of Plaintiffs' claims. Dollar Phone continues to believe that none of the claims state a cause of action and that, among other things, Plaintiffs do not have the standing to assert claims on their behalf for alleged consumer deception.

2.      Nevertheless, to the extent that the Court ultimately concludes that Plaintiffs have actually stated a claim and that indeed, *inter alia*, a competitor can be liable to another competitor for "false advertising' or "consumer deception" under the Lanham Act or the various state consumer statutes invoked by Plaintiffs or that "voice prompts" can be considered advertising, then Plaintiffs have stated claims against themselves rather than against Dollar Phone. For the facts that will be proven during this litigation will demonstrate that the Plaintiffs have engaged in pervasive consumer fraud for years through conduct far worse than the false allegations made by Plaintiffs against Dollar Phone. If a competitor can actually be liable to another competitor for such misconduct under the pertinent statutes, then Plaintiffs (and those who control them, the Third-Party Defendants) are surely liable to Dollar Phone.

3.      Dollar Phone asserts claims against Plaintiffs and the Third-Party Defendants under the Lanham Act and various consumer deception statutes in the alternative to, and without waiver of, its legal argument that Plaintiffs have failed to set forth cognizable claims because, among other things, the statutes that they cite are inapplicable to this case.

4.      Several years ago Plaintiff IDT and UTA were sued by consumers in a class-action in the United States District Court for the District of New Jersey. IDT and UTA realized that they had to settle with the consumers in the class action brought against them and, as a result

of the settlement of that case, they had to stop the deceptive conduct which gave rise to that suit. But this promise was illusory. IDT and UTA believed that if they actually had to deliver honest minutes, as required by the class action settlement, they could not survive against their competitors.

5.    Thus, IDT and UTA embarked on a two-pronged scheme.

6.    **First**, Plaintiffs commenced sham lawsuits against their competitors to hamper them from competing against them going forward.

7.    **Second**, Plaintiffs attempted to increase their market share vis-à-vis their competitors by stealing minutes from consumers in a variety of ways.

8.    As a general matter, the initial voice prompts delivered to consumers who use Plaintiffs' cards do not disclose to these users that after the first completed call, the minutes promoted on the initial voice prompt are not only eaten away by actual talk time, but by various accelerated and sharp and deceptive charging practices, such as what is referred to as "3-minute rounding," hang-up charges, access charges and the like, all of which are discussed in more detail below. These processes are repeated and indeed compounded with each successive call and voice prompt. Thus, on the next completed call, more consumer minutes are depleted by Plaintiffs' undisclosed fees, so that the prompt associated with the second call is rendered meaningless, and so on.

9.    Thus, what IDT and UTA do is generally deliver all of the minutes that they prompt only on the first completed call. Plaintiffs then immediately (and deceptively) recoup whatever money they have put in the consumers' pockets by eating up subsequent minutes with a barrage of undisclosed fees on subsequent calls. This practice is most pronounced with respect to their so-called "unlimited" cards, but is true of even their "limited use" cards as well.

10.     Given the pervasive deception of its customers, that IDT has sought to portray itself as a crusader on behalf of consumers is not only utter hypocrisy, but an attempt to misdirect the Court from its own fraud. Plaintiffs' misconduct is not limited to violations of the Lanham Act and various state consumer deception statutes, moreover. As set forth below, upon information and belief, Plaintiffs have engaged in criminal misconduct by bribing government officials in Haiti, in an attempt to monopolize the prepaid calling card market for Haitian consumers in the United States making calls back home. Specifically, Plaintiffs purchased for themselves guarantees of lower rates for the carriage of calls from Plaintiffs' calling cards to Haiti than any competitor could offer.

11.     Plaintiffs, through illicit payments, were granted the right by Teleco Haiti to terminate calls in Haiti at less than half the official settlement rate. In exchange for this favored settlement rate, Plaintiffs deposited all payments not at Teleco Haiti, but at an off-shore account in the Turks and Caicos managed by a company called Mont Salem. Long-distance revenues were one of Haiti's sources of hard currency. But after President Jean Bertrand Aristide left office in 2004, Teleco Haiti's accounts were found to be depleted, because of schemes like those engaged in by Plaintiffs.

12.     Upon information and belief, the SEC, Justice Department and the IRS are investigating IDT in connection with this scheme. Among other things, the SEC and IRS are examining IDT's tax returns for 2001-2004 because the ill-gotten gain in connection with the Haiti bribery scheme (the difference between the 9 cents that Plaintiffs paid and the 23 cents that they should have paid for the normal settlement rate) may constitute additional taxable income to IDT.

13.     Because of this scandal, in October 2006, IDT Corporation announced that its entire Board would not seek re-election, including William Weld, former Governor of Massachusetts; Jack Kemp, former Congressman and Vice Presidential nominee; Jeane Kirkpatrick, former U.S. Ambassador to the United Nations; James Gilmore, former governor of Virginia; Rudy Boschwitz, former Senator from Minnesota; and Slade Gorton, former Senator from the State of Washington. The scandal however, continues to reverberate even as recently as a few weeks ago.

14.     On July 9, 2008 the Federal Communications Commission ("FCC") imposed a $1.3 million fine on IDT for failing to file its contract for telephone service to Haiti in 2004. The FCC Order characterized IDT's conduct "as a serious dereliction of IDT's obligations under the Act and our Rules."

15.     The FCC's order had another effect as well. On July 14, 2008, former United States representative and New Jersey Gubernatorial candidate Third-Party Defendant James A. Courter, the current President and Chief Executive Officer of Third-Party Defendant IDT Corporation (the parent of Plaintiff IDT), was forced to resign from the Presidential Campaign of Senator John McCain, in which he was one of twenty national finance co-chair people.

16.     This IDT bribery scandal has been the subject of many news articles, most recently a July 28, 2008 article in the Wall Street Journal by Mary Anastasia O'Grady called "*Aristide's American Profiteers*":

> This column has long followed the story of Jean Bertrand Aristide's Haiti, two U.S. telephone companies and a few American political insiders. Many questions remain unanswered and now both companies are back in the news.
>
> On July 10, the Federal Communications Commission hit IDT Corp. with a $1.3 million fine for "willfully and repeatedly failing to file with the commission" its contracts with Haiti's telecom monopoly, Teleco Haiti, in 2003 and 2004.

Not only should those contracts have been filed, they should have been made public. Now that they have been made public, we learn that Teleco Haiti granted IDT the right to terminate calls in Haiti at less than half the official settlement rate, and that IDT agreed to deposit all payments not at Teleco Haiti, but in an offshore account in the Turks and Caicos managed by a company called Mont Salem.

Long-distance revenues were one of Haiti's few sources of hard currency. Yet after President Aristide left office in 2004, Teleco Haiti's coffers were found to be empty ...

The FCC decision against IDT is a victory for former IDT employee Michael Jewett. He filed suit in federal court in Newark, N.J., in 2004, alleging that the company fired him because he objected to an illegal deal between it and Teleco Haiti.

Much of what Mr. Jewett described in his complaint turned out to be in the contract. But there's more. He also alleged in court documents that he was told that the Mont Salem account belonged to Mr. Aristide. IDT denies this.

("*Aristide's American Profiteers.*" Wall Street Journal, July 28, 2008)

17.     Upon information and belief, and as set forth below, the Haitian scandal is just an example of what is pervasive bribery of foreign officials in various countries over a period of years so that IDT can obtain exclusive billing arrangements and/or facilities and then unlawfully undercut its competitors, as well as to cause officials to turn a "blind eye" to provisioning that is otherwise unlawful in those countries.

18.     Dollar Phone has suffered tremendously from these unlawful schemes and whatever penalties Plaintiffs have already suffered, they have failed to make Dollar Phone whole.    Their misconduct violates the Sherman Act, the Robinson-Patman Act, the Telecommunications Act of 1996 and scores of other statutes

### THIRD-PARTY DEFENDANTS

19.     Third-Party Defendant Howard S. Jonas is the founder of the various IDT entities, and is the Chairman of the Board of Third-Party Defendant IDT Corporation.

20.    Third-Party Defendant James A. Courter is the Chief Executive Officer of Third-Party Defendant IDT Corporation.

21.    Third-Party Defendant Liore Alroy, since April 1, 2008 is the Chief Executive Officer of Plaintiff IDT Telecom, Inc.  Prior to that time, he was the Executive Vice President and Chairman of the Executive Committee of the Plaintiff IDT Telecom, Inc.

22.    Third-Party Defendant Gabi Schecter is the Senior Vice President at Plaintiff IDT Telecom, Inc.

23.    Third-Party Defendant Carlos Gomez is the Chief Executive Officer of Plaintiff UTA.

24.    Third-Party Defendant Joseph Farber is a senior management employee of Plaintiff UTA.

25.    Third-Party Defendant Samuel Jonas is, upon information and belief, an officer of Plaintiff UTA.

26.    Third-Party Defendant Michael Liebov is, upon information and belief, the former President of UTA.

27.    Third-Party Defendant Yona Katz is, upon information and belief, the former Chief Executive Officer of Plaintiff IDT.

28.    Third-Party Defendant Jack Lerer, upon information and belief, is the current or former Executive Vice President for International Business Development for Third-Party Defendant IDT Corporation.

29.    Third-Party Defendant Morris Lichtenstein, upon information and belief, is the former Chief Executive Officer of Plaintiff IDT and Chief Operating Officer of Third-Party Defendant IDT Corporation.

30.     Third-Party Defendant IDT Corporation is the parent company of Plaintiff IDT Telecom, Inc. Both IDT entities will be referred collectively as "IDT."

## FACTS

I.    **PLAINTIFFS' SCHEME TO DEFRAUD CONSUMERS**

A.    **Plaintiffs' Voice Prompts Are Misleading and Plaintiffs Do Not Deliver All the Minutes Prompted**

31.     Consumers who purchase Plaintiffs' cards do not receive anything close to the minutes prompted or various other benefits promised by the Plaintiffs' advertisements.

32.     **First**, Plaintiffs' voice prompts do not disclose a crucial limitation as to how the minutes and dollar balance on Plaintiffs' cards can be used.   Plaintiffs have a policy, true of most of their cards, that after the first minute, usage on the card is billed in three minute increments – a policy known as "1-3 minute rounding."   Thus, if the consumer only has a sufficient monetary balance for 2 minutes, 50 seconds of talk time, the call will terminate after 1 minute and the card will no longer function, because there is insufficient money left on the card for at least a three minute call.   Thus, Plaintiffs in fact are deliberately depriving the consumers of enormous sums of money by preventing them from using all of the remaining balances on cards where there is balance enough to make a call (such as a  call of 2:59 call in duration).

33.     Upon information and belief, 70-80% of consumers use pre-paid calling cards to make many calls of short duration.

34.     In this regard, on some cards, Plaintiffs also give contradictory disclosures.  For example, on the "Remember Me" card, Plaintiffs disclose the 1 plus 3 minute rounding in one location, but in other locations on the card, it states that charges are rounded to the nearest minutes.  Likewise, on the Bharat Barat Phone Card, there is one disclosure that says there is one

minute rounding, but in other places on the card, it is claimed that there is rounding only to the nearest second.

35.    **Second**, because of Plaintiffs' policy of charging in three minute increments, once the consumer completes the first minute of the call, the consumer is charged for an additional three minutes, even if the consumer does not actually speak for three minutes. Thus, for example, if a consumer made a one minute, ten second phone call, that consumer would be charged for four minutes. Nowhere is this disclosed in Plaintiffs' voice prompts.

36.    **Third**, there is also evidence that Plaintiffs' computers actually wipe away the remaining monetary balances when the cards are not used and there is not a sufficient balance to make at least a one minute call. Thus, for example, if a consumer uses his calling card and has a monetary balance left over after only a fifty nine second call, and he puts his card in his wallet and goes to sleep, it is highly likely that when the consumer wakes up in the morning the balance on the card will then be zero.

37.    **Fourth**, Plaintiffs deceptively withhold minutes in other ways. For example, a voice prompt on one of Plaintiffs' cards stated when the first call was made that there would be one hour and fifty two minutes of use for that card for the destination number dialed -- $1.76 cents for the first minute and $5.28 cents for the additional three minutes. If one calculates $1.76 cents for the first minute and $5.28 cents for each three of the remaining minutes (one hour, fifty-seven minutes equal one hundred eleven minutes), that yields $1.98, with the consumer not actually receiving use of the remaining two cents. Again, testing has shown the loss of about two cents on each of the Plaintiffs' cards to be a pervasive practice and assuming tens of millions of cards are sold, substantial amounts of dollars are being removed from consumers every day by

Plaintiffs in each of the many states where they do business. This is another way in which Plaintiffs' voice prompts are affirmatively misleading.

38.    Because of Plaintiffs' incremental and rounding up billing policy and imposition of undisclosed hang-up fees, the monetary balance of Plaintiffs' cards is frequently reduced to zero before the card can deliver even close to the minutes advertised or prompted on the initial voice prompt.

39.    **Finally**, nowhere do Plaintiffs' posters or advertising materials mention the actual minutes for calls used (1) from pay telephones; (2) from or to international cell telephones; or (3) with toll-free access. This is a significant deception. IDT posters advertise minutes for landline calls only, even though Plaintiffs charge significantly more for calls made from cell telephones and pay telephones and the consumer has no way of knowing these rates without calling customer service and specifically inquiring.

### B.    Plaintiffs' Misrepresentations Concerning Their "Unlimited" Calling Cards

40.    Plaintiffs also distribute various prepaid calling cards which they market as being "unlimited" if used for certain countries. Throughout the years, Plaintiffs have, among other things, distributed posters which state in bold print, for example, **"Poland – Unlimited $5."** The average consumer viewing these advertisements could readily conclude that if the consumer purchased one of these cards, for example the "unlimited" card for Poland, the consumer could make an unlimited number of calls of unlimited duration to Poland until the expiration date of the card. In fact, Plaintiffs freely admit that no consumer can do this.

41.    Specifically, Plaintiffs have admitted that an "unlimited" card is only "unlimited" for the first call. That is, once the consumer hangs up the first time, or perhaps the second or third time, enormous hang up fees convert the so-called "unlimited" card to a "limited" one. Yet, nowhere in the advertisement can one find listing of such a limitation. Indeed, going back

to the example of Poland, if the Court reviews the advertisements (which were previously submitted by Dollar Phone in connection with its motion to enforce the Dollar Phone Settlement), the Court will see advertisements that state in beautiful, bold letters **"Unlimited - Poland"** with nothing else in the location of advertisement referencing the unlimited usage.

42.     In a deposition, Third-Party Defendant Gabi Schecter defended the misleading written advertising materials by claiming that the voice prompt states that when a consumer initially uses a purported "unlimited" calling card, the voice prompt states that the card is "unlimited for this call." Yet, it is obvious that a prompt that attempts, after the consumer has already bought the card, slyly to cure misstatements that induced the consumer to purchase the card in the first place, are far too late and useless. Moreover, a reasonable consumer would understand the term "for this call" on the voice prompt to mean that the consumer had both unlimited calls and an unlimited duration of minutes for calls made to the particular destination. In other words, "this call" means "this number."

43.     Even if the voice prompt was understood by consumers to mean what Plaintiffs claim it means, the promise of unlimited minutes for even the first call is false. In numerous instances, if a consumer uses a card for even the first call for a substantial duration, the card will be cut off.

44.     The customer support department of IDT has advised one or more callers registering complaints regarding calls made on a purportedly "unlimited" card being terminated, (even though it was the first call), that the unlimited card does not truly exist.

45.     Moreover, if due to no fault of the consumer the first call on a unlimited call is terminated (for example by reason of a power outage or problem with the server, which in the industry occurs frequently) the consumer receives no credit and the calling card is immediately

converted to a "limited" calling card. Nowhere is there any disclosure of this in either Plaintiffs' voice prompts or the disclaimers on the back of the cards or in their advertising materials.

### C.  Plaintiffs' Misrepresentations Regarding Hang Up Fees

46.  Nowhere in any voice prompt do Plaintiffs disclose that each time the consumer terminates a call, Plaintiffs charge an additional fee – known in the industry as a "hang up fee" or "call completion fee." The hang up fees can be substantial, sometimes 200% of the price of call. Nor do the Plaintiffs ever disclose that on top of the hang up fee, they charge an additional maintenance fee.

47.  Just as with respect to the purported "unlimited" cards, Plaintiffs also fail to credit consumers whose calls are terminated through no fault of the consumer, again because of an outage or technical failure by Plaintiffs or their underlying carriers. Thus, a consumer, whose call was terminated by a malfunction of a server or switch, will be charged the hang up fee.

### D.  Plaintiffs Have Admitted That Cards That They Have Distributed Do Not Deliver 100% Of The Minutes Prompted

48.  During his deposition in this action, Mr. Schecter admitted that Plaintiff UTA distributed cards under the trade name "Chilango." He further admitted that UTA terminated its relationship with the manufacturer of this card only one week prior to the deposition, because of complaints that the Chilango cards do not actually deliver all of the minutes set forth in the verbal prompts.

### E.  Plaintiffs' Advertisement of Their Tuyo and Red Card Products Is Deceptive

49.  Plaintiffs market a product under the trade name "Tuyo" that is used as a "sim card" for prepaid wireless telephones. However, advertising found on the Tuyo box states that the product can be used "like a phone card." The box and associated marketing material further

state that "your Tuyo can be used as a prepaid calling card by dialing the following local access number XXX-XXX and entering your Tuyo pin."

50.     The Tuyo boxes and associated advertising material claim that when used as a prepaid calling card, the consumer will be charged 2¢ per minute for Mexico and 6¢ per minute for the Dominican Republic.  Upon information and belief, the actual cost is 28¢ per minute for Mexico and a similar order of magnitude for the Dominican Republic.

51.     There is absolutely no disclaimer of any sort on the box or in any associated advertising materials or during the prompt of these additional fees.

52.     Plaintiffs also distribute the "Red Card" which is a prepaid calling card that can be used both in Europe and the United States.

53.     Upon information and belief, the Red Card delivers only 7% of the minutes prompted.

**F.     Misrepresentations On The Expiration Of Cards**

54.     IDT pre-paid calling cards state in small print, on the back of the card, that the card expires after 60 days of first use.

55.     Upon information and belief, many cards expire even before being activated.

**G.     The Court Has Already Found That Plaintiffs Have Engaged In This Or Similar Kinds Of Misconduct**

56.     In March of 2007, Plaintiffs moved for a preliminary injunction against various Defendants.  In opposition, Defendant STi submitted papers stating that, among other things, the motion should be denied because Plaintiffs had unclean hands inasmuch as they engaged in the same or even worse conduct as they claimed that Defendants had.

57.     In connection with that preliminary injunction application, Third-Party Defendant Gabi Schecter was Plaintiffs' 30(b)(6) witness and was deposed on April 19, 2007.  In his

deposition, Schecter confirmed that the deceptive practices discussed above existed at that time as well – less than one year ago. Based in part on the misconduct admitted by Schecter in April 2007, this Court denied Plaintiffs' motion because of, among other things, Plaintiffs' unclean hands. In particular, the Court noted that Plaintiffs "are engaging in the same conduct that they were trying to prevent the [Defendants], their competitors from engaging *via* the injunction."

58.     At a February 11, 2008 deposition, Schecter testified that the Plaintiffs had not changed their business practices since the Court had found them improper several months before.

## II.     IDT'S SCHEME TO DEFRAUD VENDORS TO GAIN AN UNFAIR PRICE ADVANTAGE IN PURCHASING WHOLESALE LONG DISTANCE SERVICES

59.     In the prepaid calling card business, much of a provider's success rests upon its ability to acquire long distance services (which are then resold to calling card customers) at a cheaper price than competitors. The cheaper long distance minutes can be purchased, the lower the price that can be offered to consumers.

60.     The more buying clout a provider has, the better rates it can negotiate with vendors.

61.     In order to increase its standing in the eyes of vendors, creating the misimpression of financial stability and stable sales, IDT manipulated its public calling card sales figures.

62.     Upon information and belief, for example, IDT had a joint venture with a New York regional distributor, King Distributors, Inc. ("King"). In violation of Generally Accepted Accounting Principles and its fiduciary duties to its joint venture partner, IDT over the course of several years refused to allow the joint venture to write off bad calling card receivables in order

to inflate sales figures.  This practice caused King to incur income tax in order to boost IDT's earnings.

63.   Upon information and belief, IDT's practice of refusing to recognize what should be considered bad debt in its calling card business was widespread, exaggerating IDT's sales figures and giving it unfair buying power.  IDT's inflated sales figures tilted the playing field in its favor in terms of negotiating favorable rates from vendors.  In addition, distributors were more willing to sell IDT prepaid calling cards under the falsely exaggerated impression of IDT's sales and market share.

64.   During a recent investor conference call on June 19, 2008, IDT CEO James Courter stated:

> the Prepaid business can't be really looked at in isolation, as you probably know. Prepaid business is an anchor tenant to the carrier business, the wholesale business. And the wholesale business is reliant to a degree on all the traffic from the prepaid business to negotiate the good rates. So there is a tremendous amount of synergy between those two businesses and one can't be looked at in isolation from the other.

65.   Upon information and belief, IDT refused to allow its distributors to recognize bad debt in order to inflate IDT's sales figures, creating the false impression of financial health and market share.

66.   This conduct enabled IDT to increase its improper advantage in its relationships with both its long distance telecom vendors.

67.   Vendors offered IDT reduced rates based upon a false impression of IDT's level of sales and buying power.

III.   **PLAINTIFFS' AND THIRD-PARTY DEFENDANTS' ATTEMPT TO MONOPOLIZE THE MARKET FOR PRE-PAID CALLING CARD CONSUMERS THROUGH BRIBERY AND OTHER UNLAWFUL CONDUCT**

68.      Not only did IDT defer recognition of bad debt to boost its image in the eyes of long distance suppliers, but IDT resorted to out and out bribery to reduce the price it paid for long distance services to an important destination – for IDT and other providers, including Dollar Phone -- Haiti.

69.      After Haitian President Jean-Baptiste Aristide ("Aristide") returned from exile in October 1994, and at Aristide's discretion, the Haitian National Telephone Company, Telecommunications d'Haiti S.A.M. ("Teleco Haiti"), began entering into agreements to provide smaller foreign carriers, including IDT, lower per-minute rates for terminating calls in Haiti than those that it had previously made available to certain larger carriers.

70.      Upon information and belief, the official settlement rate that U.S. carriers other than IDT were paying Teleco Haiti was 23 cents.  Yet, Aristide and those working at his direction or control (the "Aristide Group"), solicited, accepted and received bribes from IDT as part of a scheme whereby Telco Haiti agreed to grant IDT an exclusive rate of 8.75 cents per minute.

71.      Upon information and belief, in exchange for this favored rate, IDT made payments not to Teleco Haiti, but to Mont Salem Management, Ltd., "(Mont Salem") a company in the Turks and Caicos Islands, set up to serve as a front for the interests of the Aristide Group.

72.      Until at least June 2004, the United States Interstate Commerce Commission's International Settlement Policy required telecommunications carriers providing services between the United States and Haiti to publish and share the most favorable rates offered by Teleco Haiti to any of them.

73.    Furthermore, the FCC, under its No Special Concessions Rules, prohibited any U.S. telecommunications carrier from negotiating any type of exclusive discounted agreement with a foreign dominant carrier, which involved pricing, third-party arrangements, or operational characteristics of the transaction.

74.    IDT's agreement with Mont Salem Management and Teleco Haiti violated the FCC's International Settlement Policy and the FCC's No Special Concession Rules, since other United States carriers were paying 23 cents directly to Teleco Haiti, while IDT received the exclusive right to pay only 9 cents to a third party, Mont Salem Management.

75.    Further, FCC regulations required IDT to fully disclose its discounted price to the government, the public and all competing U.S. carriers by, among other things, filing the agreement with the FCC. IDT failed to do so.

76.    Other FCC regulations required IDT to seek prior regulatory approval of its deeply discounted 9 cents rate. Upon information and belief, IDT failed to seek any form of regulatory approval on its discounted rate.

77.    The United States Foreign Corrupt Practices Act also prohibits unlawful bribe payments, directly or indirectly, to foreign government officials, for the purpose of obtaining or retaining business.

78.    As a result of this hidden and unlawful arrangement, IDT obtained significant competitive advantage over Dollar Phone by being able to undercut Dollar Phone with respect to Haitians wanting to purchase pre-paid cards to make calls to Haiti. In fact, this bribery scheme was an attempt by IDT to monopolize the market for pre-paid calling cards purchased by Haitians (or others) wanting to use such cards to make calls to Haiti. The geographic market that

IDT attempted to monopolize was the part of the United States in which Dollar Phone and IDT compete, which is virtually every state, but certainly includes New York and New Jersey.

79.     The scandal came to light in connection with a lawsuit filed by Michael Jewett against IDT Corporation and several of its officers and directors, arising from the termination of Jewett for his allegedly complaining about the scheme.  In October of 2006, IDT Corporation announced that its Board would not seek re-election.   Those members included former Governors Weld and Gilmore, former Senators Gordon and Boschwitz, former U.N. Ambassador Kirkpatrick; and former United States Congressman, Housing Secretary and GOP Vice Presidential nominee Kemp.  Other IDT employees were forced to resign.

80.     On July 9, 2008, the FCC imposed a $1.3 million fine on IDT in connection with this scheme, calling IDT's conduct "a serious dereliction of IDT's obligations under the Act and our Rules."

81.     On July 14, 2008, because of the FCC order, IDT Corporation CEO James Courter was forced to resign as a Finance Co-Chairman of Senator McCain's Presidential Campaign.

82.     Upon information and belief, the FCC, the IRS and the Department of Justice are investigating IDT in connection with this scheme.   Among other things, IDT is being investigated for possible tax fraud for failing to disclose as income the enormous gain that it obtained from the difference in paying its exclusive rate of 9 cents, and the official settlement rate of 3 cents.

## IV.    PLAINTIFFS' UTILIZATION OF ILLEGAL INTERNATIONAL "GREY ROUTES" TO UNFAIRLY COMPETE

83.    Upon information and belief, IDT unfairly competes by utilizing illegal international "grey routes" to send calls to destinations in the Caribbean, South America, and other foreign destinations.    "Grey routes" are long-distance routes that bypass a country's government authorized telecommunications carrier as mandated by law and thereby obtain illegally low rates for sending international traffic to that country.    "Grey routes" involve disguising what are really international long-distance calls as local calls, by routing the calls into the domestic local telephone system through the internet, by passing the country's international long-distance system.  IDT thereby pays local telephone rates for a long-distance call.

84.    For example, upon information and belief, as recently as 2007-2008 IDT undercut the legally mandated rate for purchase of long distance minutes in the Dominican Republic and sent IDT calling card traffic through illegal grey routes.

85.    Upon information and belief, IDT formerly utilized a related entity known as Lermer Overseas Communications, Inc. for the purpose of routing illegal "grey route" traffic, and continues to the present time to unfairly compete and undercut Dollar Phone and other providers' prices by utilizing illegal "grey routes" through various IDT nominee entities and agents.

86.    Upon information and belief, IDT has and is engaged in bribery in various countries in order to utilize illegal international "grey routes," as well as to cause officials to turn a "blind eye" to provisioning that is otherwise unlawful in those countries.

## V.    PLAINTIFFS HAVE ENGAGED IN SHAM LITIGATION IN ORDER TO RESTRAIN COMPETITION

87.    In this lawsuit; in another lawsuit brought in Massachusetts State Court against a Dollar Phone distributor; and in a new lawsuit brought in the Supreme Court of the State of New

York against an STi affiliate, Plaintiffs have used the court system to restrain competition. Specifically, Plaintiffs have engaged in sham litigation to make false accusations of deceptive conduct, so as to intimidate their competitors, while Plaintiffs themselves engage in unlawful conduct to increase their market share.

88.     Although in each of these cases IDT falsely blames its competitors for its claimed losses, IDT has openly admitted in other venues that in fact it is IDT's own conduct that is to blame. For example, Third-Party Defendant Howard Jonas admitted during IDT's June 19, 2008 investors conference call that IDT's recurring losses in the prepaid calling card business were due in large part to its own financial mismanagement and overspending on executive salaries. Jonas stated that losses were attributable to "too much overhead, too many platforms, the Star business operations which we're closing."

## VI.     THE CONDUCT OF THE THIRD-PARTY DEFENDANTS

89.     Upon information and belief, each of the Third-Party Defendants has personally and directly engaged in or otherwise intentionally facilitated the schemes and unlawful conduct described above. In this regard, each of the Third-Party Defendants has conspired with the other and with the Plaintiffs to commit the bad acts and obtain the unlawful purposes set forth above.

90.     Accordingly, each of the Third-Party Defendants is jointly and severally liable with Plaintiffs for this misconduct.

## COUNTERCLAIMS AND THIRD-PARTY CLAIMS

91.     Dollar Phone has previously moved to dismiss Plaintiffs' claims under the Lanham Act and various state laws.  As the Court has declined to consider the merits of that motion, Dollar Phone pleads certain counterclaims and Third-Party claims under the same

statutes invoked by Plaintiffs that may be subject to dismissal under the premises of Dollar Phone's motion. These claims are pleaded in the alternative (to the extent they may be subject to dismissal on the theory of Dollar Phone's motion) in order to ensure that Plaintiffs and Dollar Phone are equally subject to the laws in question.

## COUNT I

### *FALSE AND MISLEADING ADVERTISING 15 U.S.C.§ 1125(A)(1)*
### (Against All Plaintiffs and Third-Party Defendants)

92.   Dollar Phone repeats and re-alleges the allegations set forth above in paragraphs 1 through 91 as if fully set forth herein.

93.   Plaintiffs' and Third-Party Defendants' advertising in connection with prepaid calling cards, as set forth above, constitutes use in commercial advertising or promotion of false and misleading descriptions of fact, and false and misleading representations of fact, which misrepresent the characteristics and qualities of their respective goods, in violation of 15 U.S.C. § 1125(a)(1).

94.   Plaintiffs' and Third-Party Defendants' acts of false advertising described herein were intended to cause and have caused deception of the public, deceiving and misleading purchasers in the State of New Jersey and throughout the country as to the true characteristics and qualities of Plaintiffs' products.

95.   Dollar Phone is without an adequate remedy at law.

96.   As a result of Plaintiffs' and Third-Party Defendants' acts of false and deceptive advertising as alleged above, Dollar Phone has suffered and will continue to suffer irreparable harm in the form of damage and injury to its business, reputation and goodwill, and will sustain serious loss of revenues, profits, and market share, and will continue to do so unless Plaintiffs

and Third-Party Defendants are preliminarily restrained and enjoined by the Court from further false advertising practices.

97.    Dollar Phone should be awarded an amount to be determined at trial, in compensatory damages; enhanced damages; punitive damages; and attorneys' fees

## COUNT II

### *VIOLATIONS OF VARIOUS STATE CONSUMER STATUTES*
**(Against All Plaintiffs and Third-Party Defendants)**

98.    Dollar Phone repeats and re-alleges the allegations set forth above in paragraphs 1 through 97 as if fully set forth herein.

99.    False and deceptive advertising by Plaintiffs and Third-Party Defendants constitutes unconscionable commercial practice, deception, fraud, false promise, misrepresentation, and/or a knowing concealment or omission of material facts with intent that others rely upon such concealment or omission in connection with the sale or advertisement of the respective pre-paid calling cards.

100.    This false and deceptive advertising is likely to mislead consumers with respect to the number of minutes they receive for the price they pay and as to the true characteristics and qualities of Plaintiffs' products.

101.    Plaintiffs' and Third-Party Defendants' misconduct violated Section 56.8 of the New Jersey Statutes Annotated; Section 349(a) of the General Business Law of New York; Section 350 of the General Business Law of New York; Section 17500 of the California Business and Professions Code; Section 17200 of the California Business and Professions Code; Section 501.204 of the Florida Annotated Statutes; Section 817.41 of the Florida Annotated Statutes; and Chapter 815 of the Illinois Compiled Statutes Annotated.

102.    Dollar Phone is without an adequate remedy at law.

103.   As a result of the acts of false and deceptive advertising by Plaintiffs and Third-Party Defendants as alleged above, Dollar Phone has suffered and will continue to suffer irreparable harm in the form of damage and injury to its business, reputation and goodwill, and will sustain serious loss of revenues, profits, and market share, and will continue to do so unless Plaintiffs and Third-Party Defendants are preliminarily restrained and enjoined by the Court from further false advertising practices.

104.   Dollar Phone should be awarded an amount to be determined at trial; compensatory damages; enhanced damages; punitive damages; and attorneys' fees.

### COUNT III

### *ATTEMPTED MONOPOLIZATION 15 U.S.C.§§ 2, 15*
**(Against All Plaintiffs and Third-Party Defendants)**

105.   Dollar Phone repeats and re-alleges the allegations set forth above in paragraphs 1 through 104 as if fully set forth herein.

106.   Plaintiffs filed this action and others against their competitors – nearly every other connection service provider – despite the fact that no reasonable litigant in their position could realistically expect success on the merits, further to their attempt to monopolize the market for providing prepaid telecommunications services between North America and other countries. Third-Party Defendants personally and directly engaged in or otherwise intentionally facilitated the aforementioned attempt to monopolize.

107.   Further to that attempted monopolization, Plaintiffs filed this action and others in order to attempt to interfere directly with the business relationships of Dollar Phone, and the other Defendants herein, through the use of governmental process (as opposed to the outcome of that process) as an anticompetitive weapon.   Third-Party Defendants personally and directly engaged in or otherwise intentionally facilitated the aforementioned interference.

108.   Moreover, IDT has attempted to monopolize the market through its utilization of "grey routes" and bribery related to the same.

109.   As described above, Plaintiffs and Third-Party Defendants have engaged in anticompetitive conduct with a specific intent to monopolize, and a dangerous probability of achieving monopoly power.   Plaintiffs' and Third-Party Defendants' acts of attempted monopolization have injured competition in the relevant markets generally, and Dollar Phone specifically, by impairing the ability of Dollar Phone and other entities to compete with Plaintiffs.

110.   Dollar Phone should be awarded an amount to be determined at trial; compensatory damages; enhanced damages; punitive damages; and attorneys' fees.

## COUNT IV

### *BRIBERY UNDER THE ROBINSON-PATMAN ACT 15 U.S.C. §§ 13(c), 15*
**(Against All Plaintiffs and Third-Party Defendants)**

111.   Dollar Phone repeats and re-alleges the allegations set forth above in paragraphs 1 through 110 as if fully set forth herein.

112.   Dollar Phone and Plaintiffs are direct competitors not only in the business of providing telephone connections services, as alleged previously, but are also direct competitors in providing prepaid telephone connections services for customers wishing to make calls to the Caribbean region and/or the Republic of Haiti.

113.   On information and belief, Plaintiffs and Third-Party Defendants have engaged in bribery in their dealings with Aristide and the Aristide Group and in connection with their utilization of the "grey routes."

114.   On information and belief, the acts of bribery described herein were intended to cause and have caused injury to the public and to Dollar Phone, in that Plaintiffs and Third-Party

Defendants have enjoyed an unfair competitive advantage in seeking and obtaining customers as against its competitors, including Dollar Phone, and to the detriment of the public, as a result of the benefits received in exchange for such bribes.

115. Dollar Phone should be awarded an amount to be determined at trial; compensatory damages; enhanced damages; punitive damages; and attorneys' fees.

## COUNT V

### *UNCONSCIONABLE COMMERCIAL PRACTICES*
### *NEW JERSEY STATUTES ANNOTATED § 56:8-2*
**(Against All Plaintiffs and Third-Party Defendants)**

116. Dollar Phone repeats and re-alleges the allegations set forth above in paragraphs 1 through 115 as if fully set forth herein.

117. As set forth above, Plaintiffs and Third-Party Defendants have engaged in unconscionable commercial practices and unlawful acts within the meaning of the New Jersey Consumer Fraud Act (N.J.S.A. § 56.8, et seq.) including, without limitation, bribery, false and deceptive advertising, deception, fraud, false promise, misrepresentation, and/or a knowing, concealment or omission of material facts with intent that others rely upon such concealment or omission, in connection with the sale or advertisement of their prepaid calling cards.

118. Upon information and belief, Plaintiffs' and Third-Party Defendants false and deceptive advertising is likely to mislead consumers with respect to the number of minutes they receive for the price they pay.

119. On information and belief, Plaintiffs' and Third-Party Defendants acts of false advertising described herein were intended to cause and have caused deception of the public, misleading prospective purchasers as to the true characteristics and qualities of Plaintiffs' products.

120.    Plaintiffs' and Third-Party Defendants' false and deceptive advertising has caused Dollar Phone ascertainable loss in the form of lost sales and market share and additional costs incurred in attempting to compete with Plaintiffs' and Third-Party Defendants' fraudulent business practices.

121.    Plaintiffs' and Third-Party Defendants' acts of bribery have caused Dollar Phone ascertainable loss in the form of lost sales and market share directly resulting from the unfair competitive advantage realized by Plaintiffs and Third-Party Defendants as a result of the benefits received in exchange for such bribes.

122.    Dollar Phone is without an adequate remedy at law.

123.    As a result of Plaintiffs' and Third-Party Defendants' acts as alleged above, Dollar Phone has suffered and will continue to suffer irreparable harm in the form of damages and injury to its business, reputation and goodwill, and has sustained serious loss of revenues, profits and market share, and will continue to do so, unless Plaintiffs and Third-Party Defendants are preliminarily and permanently restrained and enjoined by the Court from further false advertising practices.

124.    Dollar Phone should be awarded an amount to be determined at trial; compensatory damages; enhanced damages; punitive damages; and attorneys' fees.

## COUNT VI

### *RECOUPMENT/SETOFF*
### (Against All Plaintiffs and Third-Party Defendants)

125.    Dollar Phone repeats and re-alleges the allegations set forth above in paragraphs 1 through 124 as if fully set forth herein.

126.    To the extent, if any, that Dollar Phone is not otherwise entitled to recover from Plaintiffs and Third-Party Defendants as set forth above, Dollar Phone is entitled to a set-off or

recoupment against any affirmative recovery granted with respect to any claims that Plaintiffs and Third-Party Defendants allege or may allege.

127.   Dollar Phone should be awarded an amount to be determined at trial; compensatory damages; enhanced damages; punitive damages; and attorneys' fees.

## COUNT VII

### *VIOLATION OF § 220 OF THE COMMUNICATIONS ACT OF 1934 AND §§ 43.51 AND 64.1001 OF THE FEDERAL COMMUNICATIONS COMMISSIONS' RULES*
**(Against Plaintiff IDT and Third-Party Defendant IDT Corporation)**

128.   Dollar Phone repeats and re-alleges the allegations set forth above in paragraphs 1 through 127 as if fully set forth herein.

129.   The willful and repeated failure by Plaintiff IDT and Third-Party Defendant IDT Corporation to file a copy of its agreement with Teleco Haiti and each of the four amendments to said agreement violated Section 220 of the Communications Act of 1934 and Section 43.51 of the FCC's Rules (47 CFR § 43.51).

130.   Further, Plaintiff IDT's and Third-Party Defendant IDT Corporation's failure to file a modification request for each of its four amendments to rate schedules under the terms of its agreement with Teleco Haiti and failure to obtain approval for said amendments from the FCC violated Sections 43.51 and 64.1001 of the FCC's Rules (47 CFR §§ 43.51 and 64.1001).

131.   As described above, Plaintiffs and Third-Party Defendants have engaged in anti-competitive conduct, including attempted monopolization, bribery, and the utilization of illegal international "grey routes."

132.   Plaintiff IDT and Third-Party Defendant IDT Corporation also violated the FCC's No Special Concessions Rules (47 CFR § 63.14).

133.    By violating the Communications Act and the FCC's Rules, Plaintiff IDT and Third-Party Defendant IDT Corporation injured Dollar Phone by impairing the ability of Dollar Phone to compete with Plaintiff IDT and Third-Party Defendant IDT Corporation. Among other things, Plaintiff IDT and Third-Party Defendant IDT Corporation were unlawfully able to undercut Dollar Phone with respect to pricing for calls made by pre-paid calling cards by consumers in the United States to the Republic of Haiti.

134.    Pursuant to Sections 206 and 207 of the Communications Act of 1934, Plaintiff IDT and Third-Party IDT Corporation are liable to Dollar Phone for the full amount of damages sustained in consequence of the aforementioned violations of the provisions of the Act and the FCC Rules, together with reasonable attorneys' fees.

135.    Dollar Phone should be awarded an amount to be determined at trial; compensatory damages; enhanced damages; punitive damages; and attorneys' fees.

## COUNT VIII

### *TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE*
### (Against All Plaintiffs And Third-Party Defendants)

136.    Dollar Phone repeats and re-alleges the allegations set forth above in paragraphs 1 through 135 as if fully set forth herein.

137.    Without the interference of Plaintiffs and Third-Party Defendants, Dollar Phone would have had relationships or additional relationships with a number of consumers who would have purchased their services.

138.    As alleged above, the interference was malicious and without justification and resulted in economic damage to Dollar Phone.

139.    Dollar Phone should be awarded an amount to be determined at trial; compensatory damages; enhanced damages; punitive damages; and attorneys' fees.

**WHEREFORE**, Defendant/Third-Party Plaintiff Dollar Phone demands judgment in its favor and against Plaintiffs IDT and UTA and Third-Party Defendants, jointly and severally, as follows:

i.      That the Amended Complaint be dismissed with prejudice;

ii.      That judgment be entered in favor of Dollar Phone and against Plaintiffs on the claims alleged in the Amended Complaint;

iii.      That Dollar Phone be awarded its costs of suit and attorneys' fees incurred in connection with the Amended Complaint;

iv.      On the first count of the Counterclaim/Third-Party Complaint, for monetary relief in an amount to be determined by the Court, including all damages sustained by Dollar Phone and/or all of Plaintiffs' and Third-Party Defendants' profits or gains of any kind resulting from their unlawful practices, said amount to be trebled, and exemplary damages in light of the intentional nature of the acts complained of, pursuant to 15 U.S.C. § 1117;

v.      On the first count of the Counterclaim/Third-Party Complaint, for injunctive relief against the continuance of false and misleading advertising in the future, and directing corrective action with respect to past acts of false and misleading advertising;

vi.      On the second count of the Counterclaim/Third-Party Complaint, for monetary relief in an amount to be determined by the Court;

vii.      On the second count of the Counterclaim/Third-Party Complaint, for injunctive relief against the continuance of false and misleading

advertising in the future, and directing corrective action with respect to past acts of false and misleading advertising;

viii.    On the third count of the Counterclaim/Third-Party Complaint, for monetary relief in an amount to be determined by the Court;

ix.    On the fourth count of the Counterclaim/Third-Party Complaint, for monetary relief in an amount to be determined by the Court;

x.    On the fifth count of the Counterclaim/Third-Party Complaint, for monetary relief in an amount to be determined by the Court, said amount to be trebled in light of Plaintiffs' and Third-Party Defendants' unlawful practices, with reasonable attorneys' fees, filing fees and reasonable costs of suit pursuant to N.J.S.A. 56:8-19;

xi.    On the fifth count of the Counterclaim/Third-Party Complaint, for injunctive relief against the continuance of false and misleading advertising and bribery in the future, and directing corrective action with respect to past acts of false and misleading advertising and bribery;

xii.    On the sixth count of the Counterclaim/Third-Party Complaint, reducing any judgment or award in favor of Plaintiffs on any claim in this action by an amount to be determined by the Court;

xiii.    On the sixth count of the Counterclaim/Third-Party Complaint, for monetary relief in an amount to be determined by the Court;

xiv.    On the seventh count of the Counterclaim/Third-Party Complaint, for the full amount of damages sustained in consequence of IDT's violations of the provisions of the Communications Act of 1934 and the FCC Rules,

together with attorneys' fees;

xv.    On the eighth count of the Counterclaim/Third-Party Complaint, for monetary relief in an amount to be determined by the Court;

xvi.    On all counts of the Counterclaim/Third-Party Complaint, for punitive damages, statutory interest, and attorneys' fees; and

xvii.    For such other and further relief, including the costs and disbursements of this action, as this Court deems just and proper.

Dated: Newark, New Jersey
       August 14, 2008

Respectfully submitted,
**DUANE MORRIS LLP**

By:    */s/ Eric R. Breslin*
        Eric R. Breslin (ERB-4487)
        744 Broad Street - Suite 1200
        Newark, New Jersey 07102-3889
        (973) 424-2000 (telephone)
        (973) 424-2001 (facsimile)

*-and-*

**SCHLAM STONE & DOLAN LLP**

By:    */s/ Jeffrey M. Eilender*
        Jeffrey M. Eilender (JME-8250)
        David J. Katz (DJK-4729)
        26 Broadway
        New York, New York 10004
        (212) 344-5400 (telephone)
        (212) 344-7677 (facsimile)

*Attorneys for Defendants Dollar Phone*
*Services, Dollar Phone Enterprises, Inc.,*
*Dollar Phone Corporation, and Dollar*
*Phone Access, Inc.*

## JURY DEMAND

Defendant/Third-Party Plaintiff Dollar Phone hereby demands a trial by Jury as to all

issues so triable.


Dated: August 14, 2008


### DUANE MORRIS LLP


By:     */s/ Eric R. Breslin*_____
        Eric R. Breslin (ERB-4487)
        744 Broad Street - Suite 1200
        Newark, New Jersey 07102-3889
        (973) 424-2000 (telephone)
        (973) 424-2001 (facsimile)


        *-and-*


### SCHLAM STONE & DOLAN LLP


By:     */s/ Jeffrey M. Eilender*_____
        Jeffrey M. Eilender (JME-8250)
        David J. Katz (DJK-4729)
        26 Broadway
        New York, New York 10004
        (212) 344-5400 (telephone)
        (212) 344-7677 (facsimile)

        *Attorneys for Defendants Dollar Phone
        Services, Dollar Phone Enterprises, Inc.,
        Dollar Phone Corporation, and Dollar
        Phone Access, Inc.*

## CERTIFICATE OF SERVICE

I certify that on August 14, 2008 I caused the within Answer With Counterclaims, Third-Party Complaint, and Demand for a Jury Trial to be served upon all counsel of record through the Court's CM-ECF electronic filing system..

Dated: August 14, 2008

**DUANE MORRIS LLP**

By:     /s/ Eric R. Breslin
        Eric R. Breslin (ERB-4487)
        744 Broad Street - Suite 1200
        Newark, New Jersey 07102-3889
        (973) 424-2000 (telephone)
        (973) 424-2001 (facsimile)

        *Attorneys for Defendants Dollar Phone*
        *Services, Dollar Phone Enterprises, Inc.,*
        *Dollar Phone Corporation, and Dollar*
        *Phone Access, Inc.*