**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                        )
IDT TELECOM, INC. and UNION             )
TELECARD ALLIANCE, LLC,                 )
                                        )
                    Plaintiffs,         )
                                        )
v.                                      )          Civil Action No. 07-1076 (GEB)
                                        )
CVT PREPAID SOLUTIONS, INC., et al.,    )          **MEMORANDUM OPINION**
                                        )
                                        )
                    Defendants.         )
_____ )


**BROWN, Chief Judge**

      This matter comes before the Court upon two motions for summary judgment filed by

two sets of Defendants: (1) Telco Group, Inc., STi Phonecard, Inc., VOIP Enterprises, Inc., and

Find and Focus Abilities, Inc. (collectively the "Telco Companies" or "Telco") (Doc. No. 377);

and (2) STi Prepaid LLC ("STi") (Doc. No. 375).  Plaintiffs IDT Telecom, Inc. and Union

Telecard Alliance, LLC (collectively "Plaintiffs" or "IDT" and "UTA," respectively) oppose both

motions.  Plaintiffs filed a motion to strike the statement of undisputed material facts provided by

Telco in support of their summary judgment.  (Doc. No. 384).  Defendants oppose this motion.

The Court has considered the parties' submissions and decided the matter without oral argument

pursuant to Federal Rule of Civil Procedure 78.  For the reasons stated below, the Court will

grant STi's motion, deny in part and grant in part the Telco Companies' motion, and deny the

Plaintiffs' motion to strike.

## I.     BACKGROUND

This dispute arises from Plaintiffs' claim that they have lost market share and millions of dollars in sales as a result of Defendants' allegedly misleading advertising for prepaid phone cards.  (Am. Compl. at ¶¶ 3, 5, 7; Doc. No. 52.)

### A.     Undisputed Facts

The following facts are undisputed unless otherwise noted.  IDT, UTA, and STi are participants in the prepaid phone card industry.  (STi's 56.1 Stmt. at ¶ 1; Doc. No. 375-9.)  IDT and STi supply phone cards that are ultimately distributed to consumers who have a need for low-cost, long-distance and international calling services.  (*Id.* at ¶ 2.)  UTA is the exclusive distributor of IDT-supplied prepaid phone cards.  (*Id.* at ¶ 4.)

Prepaid calling cards are sold in dollar denominations (e.g., $5, $10) and can be used to dial numerous destinations.  (Pls.' Br. in Opp. to Telco at 2; Doc. No. 378.)  The number of minutes available on a calling card is determined by the rate per minute of talk time to the destination called minus any fees and charges.  (Telco's 56.1 Stmt. at ¶ 21; Doc. No. 377-8.) Advertisements for prepaid phone cards focus solely on the number of minutes to the key destinations for that card.  For example, a poster will emphasize that a card offers "250 minutes to the Dominican Republic." (Bohorquez Decl., Ex. 8, March 4, 2009.)

STi used a system of fees and charges that could vary according to destination, length and duration of the call, and reduced the number of minutes available for talk time.  (Telco's 56.1 Stmt. at ¶ 20; Doc. No. 377-8; STi's 56.1 Stmt. at ¶ 21; Doc. No. 375-9.)  The statements about the number of minutes available for talk time were displayed in two media relevant to this suit:

(1) on posters that were displayed at the point of sale and (2) in voice prompts that play before a

call is made.  Telco's posters informed consumers about the gross number of minutes of talk

time.  The posters also contained a disclaimer that addressed specific fees and charges as follows:

"[a]pplication of surcharges and fees will have the effect of reducing total minutes actually

received on the card from the minutes announced . . . Prices and fees . . . are subject to change

without notice." (Telco's 56.1 Stmt. at ¶ 21; Doc. No. 377-8.)  The same disclaimer was also

included on the packaging that accompanied the calling cards.  (*Id.* at ¶ 22.)  Defendants' voice

prompts are also at issue here.  Voice prompts are computer generated statements that give the

talk time to the consumer at the beginning of each call.  (Bohorquez Decl., Ex. 10 at 84:19-85:9).

Voice prompts cannot be heard by the consumer until after purchase, when the card is actually

used.  (Telco's 56.1 Stmt. at ¶ 28; Doc. No. 377-8.)

　　　During the period from 2006 until 2007, IDT lost market share in the prepaid phone card

business.  (Goldman Decl., Ex. C, Feb. 11, 2009.)  Plaintiffs cite one example showing that

IDT's sales of the Escandalo Florida card fell from more than $5 million in 2006 to about $5,000

in 2007.  (Pls.' Br. in Opp. to Telco at 13; Doc. No. 378.)  During this same period, STi's sales

grew from about $2.3 million to about $5 million.  (*Id.*)  In public filings, IDT stated that other

factors contributed to their loss of sales and market share, such as "a gradual shift in demand

away from calling cards into wireless products."  (Telco's Br. at 16 (citing Goldman Decl., Ex.

P); Doc. No. 377-7.)  In addition, IDT acknowledges that they have lost market share and sales to

competitors other than Telco and STi, including large competitors like AT&T, MCI, and Sprint,

as well as "smaller calling card providers, who from time-to-time offer rates that are substantially

below our rates . . . in order to gain market share."  (*Id.* at 16-17 (citing Goldman Decl., Ex. C).)

The corporate structures of Telco and STi were in flux during the period from 2006 to 2007.  In 2007, STi entered the prepaid phone card business when Leucadia National Corporation ("Leucadia") completed the acquisition of substantially all of the operating assets and certain liabilities of Telco and certain other affiliated companies (collectively, "Sellers") pursuant to an Asset Purchase and Contribution Agreement ("APA") dated January 23, 2007, by and among STi, Telco, and certain other parties.  (STi's 56.1 Stmt. at ¶ 12; Doc. No. 375-9.)  This date marked the end of Telco's prepaid phone card operations, and the beginning of STi's operation of said business under the direction of Leucadia.  STi acquired 75% of the assets purchased from Telco, and Mr. Samer Tawfik, the sole stockholder and decision maker of Telco, still retains the remaining 25% ownership interest in STi.  (Larsen Decl., ¶ 10, Feb. 10, 2009)  The APA expressly provides that certain liabilities were not assumed by STi.  The "Excluded Liabilities" section of the APA expressly includes any liabilities in respect of claims arising our of the prior conduct of the acquired assets:

> Notwithstanding the foregoing, any Liability listed below shall be an Excluded Liability . . . (e) all Liabilities in respect of any . . . claim arising out of . . . (i) the operation of the Business to the extent such . . . claim relates to such operation on or prior to the Initial Closing Date.

(*Id.* at ¶ 12.)  Until the transaction closed, neither STi nor any other Leucadia entity exercised any control over or had any involvement or ownership interest in Telco or in the prepaid phone card business.

After the transaction, the business and affairs of STi became exclusively managed by a board of directors ("Board").  The Board comprises 4 directors, and Leucadia has the right to nominate three of them, while Mr. Tawfik has the right to nominate the fourth.  (*Id.* at ¶ 18.)  Mr.

Tawfik remains the CEO of STi, but he now reports to the Board, unlike his role at Telco at which he was the sole owner and decision maker with accountability to no one. (*Id.*)  After acquiring Telco, Leucadia began the process of installing its own designees as officers and employees of STi.  The Leucadia-installed President, Jim Continenza, was installed in September 2007 and assumed complete responsibility for the operations of STi. (*Id.* at ¶ 23.)  Leucadia also replaced STi's Vice President for Network Operations with a former employee of a Leucadia subsidiary.  (*Id.* at ¶¶ 26, 27.)  In July 2008, STi moved its offices from Flushing, Queens to 1250 Broadway in Manhattan, and revamped its back office and technology platform.  (*Id.* at ¶¶ 36, 38.)

 **B.**  **Procedural History**

 Plaintiffs commenced this action on March 8, 2007, by filing a complaint against the Telco Companies and nine other defendants, all of which are competitors in the prepaid telephone calling card industry.  In the complaint, Plaintiffs asserted claims of false advertising under the Lanham Act (Count I) and false advertising under § 56:8 of the New Jersey Statutes Annotated (Count II).  Plaintiffs have also asserted claims under several other state law theories, including claims for deceptive conduct under New York General Business Law § 349 (Count III), false advertising under New York General Business Law § 350 (Count IV), false advertising under California Business and Professional Code § 17500 (Count V), deceptive practices under California's Unfair Competition Law (Count VI), a claim under the Florida Deceptive and Unfair Trade Practices Act (Count VII), false advertising under the Fla. Stat. § 817.41 (Count VIII), and claims under the Illinois Consumer Fraud Act (815 ILCS 505/2) (Count IX) and Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510) (Count X).  Plaintiffs have since reached

settlements with eight of the other nine defendants, leaving the Telco Companies and STi.

On March 9, 2007, Judge Susan D. Wigenton issued an Order to Show Cause why a Preliminary Injunction should not Issue.  (Doc. No. 3.)  On May 16, 2007, Judge Wigenton denied entry of the Order.  (Doc. No. 128.)  This decision was appealed to the Third Circuit, and ultimately affirmed.  *IDT Telecom, Inc. v. CVT Prepaid Solutions, Inc.*, 250 Fed. Appx. 476 (3d. Cir. 2007).  On May 9, 2007, Defendant CVT Prepaid filed a motion to dismiss the complaint pursuant to FED. R. CIV. P. 12(b)(1), arguing that the Court lacked subject matter jurisdiction. (Doc. No. 53).  The other Defendants later joined CVT. (Doc. No. 120).  Judge Wigenton heard oral argument on the motion on May 9, 2007, and denied it in a ruling from the bench.  (Doc. No. 126.)  On June 15, 2009, the case was transferred from Judge Wigenton to Judge Peter G. Sheridan.  On September 9, 2009, the case was transferred from Judge Sheridan to this Court.

On February 11, 2009, Defendants filed the present motions for summary judgment.  On March 5, 2009, Plaintiffs filed the present motion to strike.  All matters were fully briefed on March 30, 2009.  On September 23, 2009, the parties terminated the motions and proceeded to mediation.  After unsuccessful mediation attempts, the motions were restored to the active docket on December 7, 2009.

## II.   DISCUSSION

Both Telco and STi have moved for summary judgment on all claims, arguing: (1) that the plaintiffs lack standing to assert either a Lanham Act claim or any state law claim (Telco's Br. at 33; Doc. No. 377-2), and (2) that they are not liable under the Lanham Act or the state law claims due to lack of causation between the alleged false advertising and Plaintiffs' lost sales (*Id.* at 9).  STi joins Telco's arguments, and further argues that they are not liable for the acts of the

6

Telco companies under the successor liability doctrine. (*See generally*, STi's Br.; Doc. No. 375)

Finally, Plaintiffs have filed a motion to strike the Statement of Undisputed Material Facts that

Telco submitted with its motion for summary judgment.  (Pls.' Mot. to Strike at 1, Doc. No.

384.)  In support of that motion, Plaintiffs argue that the 56.1 statement "is riddled with legal

arguments and advocacy, statements that are not supported by the record or that do not even cite

to the record, and argumentative parentheticals that color and mischaracterize the evidence.  (*Id.*)

### A.    Standard of Review

A party seeking summary judgment must "show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prods. Co.,*

*Inc.*, 789 F.2d 230, 232 (3d Cir. 1986).  The threshold inquiry is whether there are "any genuine

factual issues that properly can be resolved only by a finder of fact because they may reasonably

be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)

(noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving

party for a jury to return a verdict in its favor).  In deciding whether triable issues of fact exist,

the court must view the underlying facts and draw all reasonable inferences in favor of the

non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986);  *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*,

811 F.2d 225, 231 (3d Cir. 1987).

### B.    Application

#### 1.    Standing

Defendants first argue that Plaintiffs IDT and UTA lack standing to assert a claim under

the Lanham Act.  This issue has not been brought before the Court previously in a Motion to

Dismiss.  Section 43(a) of the Lanham Act, pursuant to which this suit was brought, provides:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation or origin, false or misleading description of fact, or false or misleading representation of fact which -
>
> (A) is likely to cause confusion . . .
>
> shall be liable in a civil action <u>by any person who believes that he or she is or is likely to be damaged</u> by such act.

15 U.S.C. §1125(a) (emphasis added).   Standing is comprised of both constitutional and

prudential components.  *Bennett v. Spear*, 520 U.S. 154 (1997) (citing *Warth v. Seldin*, 422 U.S.

490, 498 (1975)).

The prudential component of standing is a set of judge-made rules forming an integral

part of "judicial self-government."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

The purpose of this form of judicial self-governance is to determine whether the plaintiff is "a

proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial

powers." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 546 n.8 (1986).  Determining

prudential standing is a matter of statutory interpretation, and Congress is presumed to

incorporate background prudential standing principles unless the statute expressly negates them.

*Bennett*, 520 U.S. at 163.

The Third Circuit has held that prudential standing was not expressly negated by

Congress in enactment of the Lanham Act.  *Conte Bros. Automotive v. Quaker State-Slick 50,

Inc.*, 165 F.3d 221, 230 (3d Cir. 1998).  Further, the Third Circuit also adopted a clear five-factor

test for determining a party's statutory standing under §43(a) of the Lanham Act.  *Id.* at 233.  The

five factors in determining standing are:

> (1) the nature of the plaintiff's alleged injury: is the injury of a type that
>     Congress sought to redress in providing a private remedy for violations
>     of the [Lanham Act]?;
> (2) the directness or indirectness of the asserted injury;
> (3) the proximity or remoteness of the party to the alleged injurious conduct;
> (4) the speculativeness of the damages claim; and
> (5) the risk of duplicative damages or complexity in apportioning damages.

*Id.* at 232. (citing *Associated Gen. Contractors of California, Inc. v. California State Council of

Carpenters*, 459 U.S. 519 (1983)).   The prudential standing of each plaintiff will be addressed in

turn.

### a.    *IDT's Standing*

Telco argues that IDT lacks standing to sue under the Lanham Act because "Plaintiffs

cannot show that Telco . . . lured customers away from Plaintiffs, nor can they show that but for

Telco's conduct consumers would have purchased their prepaid calling cards from Plaintiffs."

(Telco's Br. at 34; Doc. No. 377-7.)  Telco argues that IDT has not shown direct causation

between the alleged false advertising and their loss of market share, and further argues that

Plaintiffs' "speculative" damages are enough to deny standing to IDT.  (*Id.* at 34-35).  This

argument must fail.  Here, IDT has alleged an actual injury that is of the exact nature that the

Lanham Act was enacted to protect against: the loss of sales due to a competitor's false

advertising.  IDT's allegations are sufficient to support a claim under the Lanham Act.  Even if

IDT's damages are speculative, it is but one factor in the test that grants IDT standing under the

*Conte Bros.*  The first through third factors all weigh in favor of granting IDT standing: the injury

is the exact type that Congress sought to redress, the alleged injury is sufficiently direct, and IDT

is not at all remote from the alleged injurious conduct.  The fifth factor, the risk of duplicative damages, also weighs in favor of IDT because the Defendants will not be forced to "pay double" if IDT is granted standing.  The Court therefore concludes that IDT has standing, and that Defendants' Motions are denied as to that respect.

> b.   *UTA's Standing*

The *Conte Bros.* analysis also applies to UTA.  Both sets of defendants (STi and Telco) argue that UTA lacks standing to assert a claim under the Lanham Act.  UTA is a distributor of prepaid phone cards, while STi is a provider of these cards.  (*See* Larsen Decl. ¶ 33; Kaplan Decl., Ex. 6, at ¶ 26, Feb. 11, 2009.)  STi and Telco both argue that UTA lacks a sufficiently direct competitive relationship to have standing to assert claims under either the Lanham Act or state law.

> 1.   *Standing Under The Lanham Act*

The same five-factor test for standing under the Lanham Act should be applied to determine UTA's standing.  *Conte Bros.*, 165 F.3d at 230.  STi argues that UTA cannot satisfy the first factor because "its loss of sales at the distribution level allegedly as a result of STi Prepaid's false advertising does not impact UTA's ability to compete . . ."  (STi's Br. at 33; Doc. No. 375-2.)  UTA counters by reading *Conte Bros.* to indicate that a court will extend standing beyond "direct competitors" when standing is appropriate based on the facts of the case.  (Pl.'s Br. in Opp. to STi at 30; Doc. No. 379.)  UTA further states that "UTA is a joint venture that is majority-owned by IDT Telecom" and that "IDT Telecom and UTA work in conjunction with one another to provide high quality services and products."  (*Id.* at 30; Bohorquez Decl. Ex. 18 at 5, 13).  UTA argues that they suffer losses from IDT's loss of market share.  These facts are fatal

to UTA's standing under current Third Circuit jurisprudence.  UTA is in the same position as the failed Appellants in *Conte Bros.*

*Conte Bros.* involved a class of retail sellers of motor oil and other engine lubricants that competed with Slick 50, an engine lubricant manufactured by the Appellees.  *Conte Bros.*, 165 F.3d at 223-224.  The class of retailers challenged the Slick-50 manufacturers under § 43(a) of the Lanham Act alleging misrepresentations and false advertisements pertaining to Slick-50, which increased sales of Slick-50 and decreased sales of the products sold by the Appellants.  *Id.* at 224.  The Third Circuit rejected the retailers' standing to sue based on the aforementioned five-factor test, holding that "[t]he type of injury suffered by Appellants - loss of sales at the retail level because of alleged false advertising - does not impact the Appellants' ability to compete . . ." and "the alleged harm is not of the type that Congress sought to redress by enacting the Lanham Act." *Id.* at 234 (internal citations omitted).

The Third Circuit further noted that "recognizing the right of every potentially injured party in the distribution chain to bring a private damages action would subject defendant firms to multiple liability for the same conduct and would result in administratively complex damages proceedings." *Id.* at 235.  While UTA alleges a commercial harm as a result of Telco's conduct in the form of lost sales of the cards it distributed, it has failed to present any evidence of a competitive harm vis-á-vis other distributors of prepaid calling cards.  The Court concludes that UTA's asserted injury is indirect, and the close relationship between UTA and IDT would lead to multiple liability for the Defendants if UTA were granted standing. Thus, the Court concludes that UTA lacks standing to sue with respect to the Lanham Act claims.

        c.       *State Law Standing*

Telco next argues that both of the Plaintiffs lack standing to assert a claim under the New Jersey Consumer Fraud Act ("NJCFA") because only consumers have standing to sue under the Act. (Telco's Br. at 41; Doc. No. 377-7.) To bring an NJCFA claim, Plaintiffs must demonstrate that they are "consumers" and that the items they purchased are "merchandise." *Viking Yacht Co. v. Composites One LLC*, 496 F. Supp. 2d 462, 473 (D.N.J. 2007). A "consumer," while not defined by the NJCFA, has been described as "one who uses economic goods, and so diminishes or destroys their utilities." *Windsor Card Shops v. Hallmark Cards*, 957 F.Supp. 562, 567 (D.N.J. 1997)(quoting *Hundred E Credit Corp. v. Eric Schuster*, 212 N.J. Super 350, 355 (1986)). Other courts have noted that the NJCFA applies to competitors as well as consumers. *Gen. Dev. Corp. v. Binstein*, 743 F.Supp. 1115 (D.N.J. 1990); *Riley v. New Rapids Carpet Center*, 61 N.J. 218, 225 (1972) ("[T]he reputable vendor . . . has a stake in the suppression of dishonest competition.") However, no court explicitly holds that a competitor has standing to sue under the NJCFA, and this Court refuses to extend standing beyond consumers. *See Barr Labs, Inc. v. Bolar Pharm. Co.*, Civ. No. 91-4374, 1992 U.S. Dist. LEXIS 22883 (D.N.J. July 14, 1992); *see also Specialty Ins. Agency v. Walter Kaye Assoc., Inc.*, Civ. No. 89-1708, 1989 U.S. Dist. LEXIS 11842 (D.N.J. Oct. 2, 1982). Here, because neither UTA nor IDT are "consumers" as defined by New Jersey law, summary judgment is granted on behalf of Defendants with respect to Plaintiffs' NJCFA claims.

Finally, Telco argues that Plaintiffs lack standing to pursue a claim for damages under the California Business and Professions Code because damages are not an available remedy. (Telco's Br. at 41; Doc. No. 377-7). Under the Code, restitution is the only form of monetary relief permitted. *Montecino v. Spherion Corp.*, 427 F. Supp. 2d 965, 967 (C.D. Cal. 2006).

Plaintiffs have not proffered any evidence that they are entitled to restitution as purchasers of the Telco Companies' cards.   Therefore, summary judgment will be granted to Defendants with respect to Plaintiffs' damages claims under the California Business and Professions Code.

### 2.   Lanham Act Claims

Both sets of Defendants argue that the elements of a Lanham Act claim have not been met, and that they are entitled to summary judgment[1].   To establish a violation under Section 43(a) of the Lanham Act, Plaintiffs must show by a preponderance of the evidence: (1) that the Defendants made false or misleading statements as to their own product (or another's); (2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the advertised goods traveled in interstate commerce; and (5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc. *Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 129 (3d Cir. 1994) (quoting *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 922-23 (3d Cir. 1990)).   In order to obtain damages under 43(a), a Plaintiff "must show not only that the Defendant's advertisement is false but also that this falsification actually deceives a portion of the buying public." *Parkway Baking Company v. Freihofer Baking Company*, 255 F.2d 641, 648 (3d Cir. 1958).   The Plaintiff does not bear the burden of proving the details of every lost

---

[1] Telco also argues that they are entitled to summary judgment on the issue of Plaintiffs' Permanent Injunction, because they are no longer engaged in the business of selling prepaid phone cards and the injunction is therefore moot.   A party seeking to avoid an injunction bears a heavy burden of showing that "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968).   Because it is undisputed that Telco still exists as a corporation and could technically revive their prepaid phone card sales, the Court will deny Telco's summary judgment motion with respect to this argument.

sale, but there "must be a showing of some customer reliance on the false advertisement." *Id.* This requires proof that "the public was, in fact, misled," which usually requires evidence in the form of a consumer survey. *Johnson & Johnson*, 19 F.3d at 129-30.

a. *The Causation Element of the Lanham Act*

This causal link between the alleged false advertisement and Plaintiffs' damages is argued in the instant motion.  A Plaintiff must establish a causal link between the alleged false advertising and the claimed damages. *Synscort, Inc. v. Innovative Routines Int'l, Inc.*, Civ. Action No. 04-3623 (WHW), 2008 WL 1925304 (D.N.J. Apr. 30, 2008).  Because this information is almost universally provided in the form of a consumer survey, Defendants argue that the lack of such a survey is fatal to the Plaintiffs' claims.  Plaintiffs have pled facts including, but not limited to: (1) evidence that STi deliberately targeted and focused false advertising toward IDT; (2) evidence that customers, including calling card distributors who sold STi's cards in major markets, relied on and were confused by STi's alleged false advertising about the number of minutes its card could deliver; (3) evidence that during the period STi increased its false advertising about minutes, STi's sales increased and IDT's market share decreased; and (4) evidence that the perception that IDT failed to offer minutes competitive with STi's offerings was based on the number of minutes advertised by the parties in posters and on voice prompts.  (Pls.' Br. in Opp. to Telco at 18; Doc. No. 378.)   Plaintiffs argue that whether Defendants' advertising confused consumers is a genuine issue of material fact.  (*Id.* at 19.) Plaintiffs also cite nonbinding case law stating that circumstantial evidence "can be sufficient to prove causation in a false advertising case just as it can be to prove other propositions." *Playtex Prods., Inc. v. Proctor & Gamble Co.*, 126 Fed. Appx. 32, 35 (2d Cir. 2005) (finding causation

14

where plaintiffs produced evidence establishing market share before and after advertising campaign, the nature of the market, strong brand loyalty among customers, and the stated goals of the advertising campaign.)

The Court concludes that Plaintiffs have proffered sufficient evidence to survive a summary judgment motion.  (*See* Pls.' Br. in Opp. to Telco at 17-19; Doc. No. 378)(citing IDT's evidence of consumer deception).  There are genuine issues of material fact with respect to causation, including the changes in market share and other details about the allegedly deceptive trade practices.  That a consumer survey was not proffered by Plaintiffs is not fatal to their case.  In no section of the Lanham Act or Third Circuit case law does it state that a consumer survey is a requirement to establish a damages claim under Section 43(a).  Therefore, Defendants' STi Prepaid and Telco's motions for summary judgment will be denied with respect to the causation element of the Lanham Act.

### b.    Other Lanham Act Elements

Aside from causation, the Defendants argue that other elements of a Lanham Act claim are not met and thus that they are entitled to summary judgment.  First, Defendants argue that "Plaintiffs cannot show that the Telco Companies [and STi] made *false or misleading statements* as to their own prepaid calling cards or as to Plaintiffs' prepaid calling cards."  (Telco's Br. at 25; Doc. No. 377-7) (emphasis added).  Two sets of communication are at issue here: (1) poster advertising and (2) voice prompts.  Defendants argue that their posters are not false and misleading because they contain a disclaimer which reads "[a]pplication of surcharges and fees will have the effect of reducing total minutes actually received on the card from the minutes announced . . . Prices and fees . . . are subject to change without notice." (Telco's Br. at 25; Doc.

15

No. 377-7.)  Plaintiffs counter by citing *FTC v. Clifton Telecard Alilance*, in which Judge

Sheridan granted an injunction against the defendant for falsely advertising inflated minutes on

posters despite a small disclaimer.  Dkt. No. 1, 2:08-cv-01480 (D.N.J. 2008).  Plaintiffs also

argue that the advertisement is misleading *per se*, because there would be no way for a customer,

using the card in such a way to bypass all extra fees, to actually be able to use a card for the

amount of minutes advertised.  (Pls.' Br. in Opp. to Telco at 29; Doc. No. 378.)  The Court

concludes that whether Defendants' posters are false and misleading is a genuine issue of

material fact, and thus Defendants' motions are denied with respect to this element.

The second issue related to the falsity of advertisements is the Defendants' use of voice

prompts.  The Lanham Act only provides liability for false "commercial advertising."  15 U.S.C.

§ 1125(a)(1)(B).  Thus, if a voice prompt is not commercial advertising, it cannot be the subject

of a Lanham Act claim.  The fact that the voice prompt is only heard after the consumer has

purchased the card is not fatal to the Lanham Act claim.  Courts have held that "[A]ny

promotional statement directed at actual or potential purchasers" is encompassed by the Lanham

Act.  *Gordon & Breach Science Publishers S.A. v. Am. Inst. of Physics*, 905 F. Supp. 169, 182

(S.D.N.Y. 1995).  Here, the key inquiry is whether the statement is promotional.  Promotional

advertisements that are only visible after a consumer has purchased a product have been held to

violate the Lanham Act, but the voice prompts at issue in this case are neither promotional nor

advertisements.  These are informational statements designed to alert the consumer of the

remaining talk time, and have nothing to do with promoting or furthering the sales of more

prepaid phone cards. Therefore, the Court concludes that the Defendants' voice prompts cannot

be the subject of a Lanham Act claim.

In addition to being false or misleading, the Plaintiffs must also prove that the Defendants' misrepresentation is "material, in that it is likely to confuse the purchasing decision." *U.S. Healthcare*, 898 F.2d at 922 (citations omitted).  Defendants argue that the number of advertised minutes is completely immaterial to purchasers of prepaid calling cards. (Telco's Br. at 27; Doc. No. 377-7.)  Defendants state that "[a]mong the most important factors for consumers are: (a) the number of minutes actually delivered by a card, rather than the advertised minutes; (b) the clarity of the connection; and (c) the connectivity of the card." (*Id.* (citing Telco's Rule 56.1 Stmt. ¶¶ 33-42; Doc. No. 377-8)).  Plaintiffs conducted a survey of potential prepaid calling card consumers (Goldman Decl. Ex. CC ("The Johnson Report")).  In this survey, they found that only 2 of 401 respondents indicated that Advertising/Posters/Flyers are how they "generally decide" which card to buy.  (*Id.* at ¶ 20.)  The Johnson Report further states that only 3% of the consumers surveyed "look at the printed material in the store" to tell how many minutes are available on their cards.  (*Id.* at ¶ 21.)  Defendants argue that these low numbers, on their own, prove that the advertisements are not material to the purchasing decisions of consumers.  (Telco's Br. at 29.)  The Court is not convinced that low polling numbers in the Johnson report mean that the number of advertised minutes are, by law, immaterial to consumers. Because the advertisements go so clearly to the purpose of the product - the amount of minutes of talk time that they deliver - the statements are material as a matter of law. *See S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir. 2001) (lack of leakage is an inherent quality or characteristic of Ziploc storage bags such that a claim was clearly material).   Thus, summary judgment with relation to the allegedly false and misleading posters is denied.

### 3.     State Law Claims

17

Defendants argue that summary judgment is appropriate because Plaintiffs have failed to show the same element of causation that is supposedly missing from the Lanham Act claim. (Telco's Br. at 38; Doc. No. 377-7.)

    a.    *New York*

Defendants argue that summary judgment is appropriate because Plaintiffs have failed to show the same element of causation that is supposedly missing from the Lanham Act claim. (Telco's Br. at 38).  New York General Business Law § 350 requires proof of customer reliance; New York General Business Law § 349 requires a causal connection between plaintiff's injury and defendant's misrepresentation.  *Small v. Lorillard Tobacco Company, Inc.*, 679 N.Y.S.2d 593, 604 (App. Div. 1998).   For the reasons stated in the Lanham Act section of this opinion, Defendants have not shown that Plaintiffs claims fail as a matter of law.  The Court concludes that Defendants' motions for summary judgment should be denied with respect to the New York state law claims.

    b.    *California*

To state claim under California's False Advertising Law, a plaintiff must show only that members of the public are likely to be deceived.  *Mazza v. American Honda Motor Co.*, 254 F.R.D. 610, 627 (C.D. Cal. 2008).  The standard is that of reasonable consumer, and actual deception or confusion caused by misleading statements is not required.  *Id.*  This standard is lower than that required by the Lanham Act.  For the same reasons that Plaintiffs' Lanham Act and other state law claims survive, so too does their California state law claim.

    c.    *Florida and Illinois*

The Florida and Illinois state law claims (Counts VII-X) are similar to that of the New

York and California state law claims.  Under the Florida Deceptive and Unfair Trade Practices

Act (Count VII), the plaintiff myust show that "the unfair or deceptive practice . . . actually

resulted in damage."  *Lydia Security Monitoring, Inc. v. Alarm One, Inc.*, No. 07-80145, 2007

U.S. Dist. LEXIS 62087, at *11-12 (S.D. Fla. Aug. 23, 2007).  A claim for false advertising

under Fla. Stat. § 817.41 (Count VIII) requires proof of each of the elements of common law

fraud in the inducement, including that "the plaintiff suffered injury in justifiable reliance on the

representation." *Joseph v. Liberty Nat'l Bank*, 873 So. 2d 384, 388 (Fla. Ct. App. 2004).  Finally,

a claim under the Illinois Consumer Fraud Act (815 ILCS 505/2) (Count IX) requires Plaintiffs to

establish "actual damage" that was "proximately caused by the deception" *DeBouse v. Bayer AG*,

896 N.E.2d 882, 888 (Ill. App. Ct. 2008).  For all of the reasons discussed above, Plaintiffs have

pled enough facts to create a genuine issue of material fact with respect to these claims.  Count X

alleges a breach of the Illinois Uniform Deceptive Trade Practices Act.  Money damages are not

available under the Act.  *Fedders. Corp. v. Elite Classics*, 279 F. Supp. 2d 965, 972 (S.D. Ill.

2003).  Therefore, summary judgment will be granted on Count X.

### 4.  STi Prepaid a/k/a "New STi"

STi also moves for summary judgment on the grounds that it is not liable for the acts of

its corporate predecessor, Telco.  (STi's Br. at 17; Doc. No. 375-2.)  STi argues that the doctrine

of successor liability should not apply to this situation, because STi is not a "mere continuation"

of Telco.  (*Id.* at 18.)  The parties also dispute which law applies, with STi noting that "New

York law should apply because this inquiry involves entities whose principal places of business

were and are in New York . . ." and IDT stating that New Jersey has a "compelling interest in

providing redress to a corporation doing business in New Jersey."  (*Id.* at 17 n. 13; Pls.' Br. in

Opp. to STi at 16; Doc. No. 379.)

### a.    Choice of Law

Though the laws of New York and New Jersey are very similar with respect to successor liability, it is necessary for this Court to conduct a proper choice of law analysis. A federal district court must apply the choice of law rules of its forum state to determine what law will govern the substantive issues of a case. *Klaxon Co. v. Stenor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). When deciding choice of law questions, New Jersey courts apply the flexible two-step "government interest analysis". *Rowe v. Hoffman-La Roche, Inc.*, 189 N.J. 615, 621 (N.J. 2007). Under governmental interest analysis, the "determinative law is that of the state with the greatest interest in governing the particular issue." *Veazey v. Doremus*, 103 N.J. 244, 248 (N.J. 1986). The Plaintiffs IDT and UTA are both domiciliaries of New Jersey. (Pls.' Br. in Opp. to STi at 16; Doc. No. 379.) Also, New Jersey has a "compelling interest in providing redress to a corporation doing business in New Jersey." *In re B.S. Livingston & Co.*, 186 B.R. 841, 863 (D.N.J. 1995). Thus, the Court will apply New Jersey law to the extent that it conflicts with New York law.

### b.    The Successor Liability Doctrine

When one company sells or transfers all of its assets to another, the second entity does not become liable for the debts and liabilities, including torts, of the transferor. *Luxliner, P.L. Export Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 73 (3d Cir. 1993). There are four judicially created exceptions to this presumption against the finding of successor liability. Under these exceptions, the Plaintiff must prove that: (1) the successor corporation either expressly or implicitly assumed the liabilities of its predecessor; (2) the transaction constituted a *de facto* merger or consolidation; (3) the purchasing corporation is a mere continuation of its predecessor; or (4) the

transaction is entered into to defraud creditors or for another fraudulent purpose.  *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 464-65 (3d Cir. 2006).  These will be addressed in turn.

### 1.      Assumption of Liability

The first exception that would subject STi to successor liability is whether they expressly or implicitly assumed the liabilities of Telco.  Plaintiffs argue that "STi *concedes* that it assumed essentially all of Old STi's [Telco's] liabilities necessary to continue Old STi's [Telco's] business without interruption."  (Pls.' Br. in Opp. of STi at 22; Doc. No. 379.)  To support this argument, Plaintiffs make blanket statements that the parties' intent in creating the STi companies was to absorb and continue the operations of Telco.  (*Id.* at 18.)  STi argues that the APA expressly provides that STi Prepaid did not assume any liabilities for any claims arising out of the prior conduct of the acquired assets and, in fact, excluded those liabilities from the transaction.  (Larsen Decl. at ¶ 12; Kaplan Decl., Ex. 15 at STIPP 4086.)  Because there is undisputed language in the APA that expressly provides that STi Prepaid would not assume liability for the claims relating to Telco's pre-closing operations at issue here, no reasonable juror could conclude that there was an assumption of liability, either express or implied.

### 2.      De Facto Merger and Mere Continuation

The second and third exceptions to the presumption against successor liability are often analyzed in tandem, and this Court will do the same.  *See Berg*, 435 F.3d at 464 (stating that de facto merger and mere continuation are "generally treated identically").  To succeed in proving that the acquisition was a de facto merger, the Plaintiffs must prove four elements: (1) continuity of shareholders or ownership; (2) cessation of ordinary business and dissolution of the acquired corporation as soon as possible; (3) assumption by successor of liabilities ordinarily necessary for

uninterrupted continuation of business of acquired corporation; and (4) continuation of the enterprise of the selling entity so that there is continuity of management, personnel, physical location, assets, and general business operations.  *Id.* at 468-9.  Further, the "mere continuation" exception will allow liability to run to the successor when there is a "mere continuation" of the business of the predecessor, i.e., the successor is nothing but the predecessor in disguise.  *Id.* at 465; *Luxliner*, 13 F.3d at 73.

To prove a continuity of ownership, the Plaintiffs must prove that "the purchasing corporation [] represent[s] merely a 'new hat' for the seller."  *Luxliner*, 13 F.3d at 75.  Here, it is undisputed that the corporate structures of STi and Telco differ in several respects.  Mr. Tawfik, who had been the sole owner of Telco, received only a 25% interest in STi Prepaid, and Leucadia now controls the STi's Board.  (Larsen Decl. ¶ 10; Kaplan Decl. Ex. 15; Larsen Decl. ¶ 19; Kaplan Decl. Ex. 16 at 18:4-9 18:20-19:15, 334:23-335:2; Kaplan Decl. Ex. 39 at 8:10-11.) Among other things, Leucadia has exhibited control over the governance of STi Prepaid by installing new designees as officers and employees of STi Prepaid.  Because there are no disputed material facts which could lead a reasonable juror to conclude that Mr. Tawfik controls STi Prepaid, the Court concludes that STi is not a "mere continuation" of Telco.  Because this element of the analysis fails, successor liability based on a *de facto* merger cannot be imposed on STi.

The second factor in a *de facto* merger analysis is whether there was a cessation of ordinary business and dissolution of the acquired corporation as soon as possible.  Here, "it is undisputed that on March 8, 2007 . . . the Telco Companies sold all of their assets to STi Prepaid, LLC and ceased doing business." (Telco's Br. at 9; Doc. No. 377-7.)  It is further undisputed that

Telco ceased phone card operations at the time the transaction closed.  (STi's Br. at 22; Doc. No. 375-2.)  The third factor, assumption of liabilities, also weighs against finding successor liability.  Because STi expressly did not assume the liabilities of Telco, this prong of the analysis will also fail.  The fourth and final factor of the *de facto* merger analysis is whether there was a continuation of the enterprise of the selling entity. Here, Telco superficially continues as a corporation, though it is a shell of its former self.  (STi's Br. at 22-23.)  The mere lack of formal dissolution does not allow the Defendants to claim that Telco continues (*Wilson v. Fare Well Corp.*, 140 N.J. Super. 476 (N.J. Super. Ct. Law Div. 1976), and the Court concludes that this factor favors the Plaintiffs as Telco ceased doing business.  However, this one factor weighing in favor of Plaintiffs does not tip the scales in favor of a *de facto* merger.  As discussed above, the significant changes made by STi prepaid to its management and general business operations demonstrate that no reasonable juror could conclude that STi is just Telco in a "new hat" and thus successor liability is inappropriate.

### 3.      Fraud

The fourth and final exception that would impose successor liability on STi is whether the transaction was entered into to defraud creditors or for an otherwise fraudulent purpose.  Since no parties have presented any evidence of a fraudulent transaction, this prong also fails.  Because none of the exceptions to the presumption that successor liability does not apply to an asset sale apply, the Court concludes that STi's motion for summary judgment will be granted.

### 5.      IDT's Motion to Strike

Plaintiff IDT has moved to strike the Local Rule 56.1 Statement of Undisputed Material Facts filed with Telco's motion for summary judgment.  The Court is able to discern the

undisputed material facts related to Telco's motion for summary judgment, and in the interest of judicial economy need not strike the document.  The delay caused by re-briefing the motions to delete the minimal amount of attorney argument in all of the 56.1 statements is not necessary in light of the lack of prejudice to any party.  The 56.1 statement is also not a summary judgment statement of facts.  Accordingly, Plaintiff's motion to strike (Doc. No. 384) is denied.

## III.    CONCLUSION

For the foregoing reasons, Defendant STi Prepaid's motion for summary judgment (Doc. No. 375) is granted; Defendant Telco's motion for summary judgment (Doc. No. 377) is granted in part and denied in part; Plaintiffs' Motion to Strike (Doc. No. 384) is denied.  An appropriate form order is filed herewith.


Dated: December 28, 2009


___ s/ Garrett E. Brown, Jr._____
GARRETT E. BROWN, JR., U.S.D.J.